## MEDORA RUNDLE v. G. G. PEGRAM, Adm'r.

1. MARRIAGE—ITS REQUISITES.—It is well settled law in this State that marriage is a contract, and must be entered into by parties competent to contract. Carson v. Carson, 40 Miss., 340. Being a civil contract, if it be entered into with all the common law requisites, but without the forms prescribed by the statute, it will be valid. The statute does not denounce a marriage invalid celebrated otherwise than as it directs. Hargrove v. Thompson, 31 Miss., 211. There must be mutual consent, and this must be actual and *bona fide*. Smith v. Smith, 47 Miss., 215.

2. SAME—EFFECT OF § 22, ART. 12 OF THE CONSTITUTION.—This section does not impose marriage upon any except those who were willing and consenting to and actually cohabiting in the relation of husband and wife, and accepting and recognizing each other as husband and wife. It did not intend to sanctify the marital relation between a man and woman because they were cohabiting together as husband and wife, although such living together may have extended through many years, and although it may have been public and notorious, unless the parties intended, and in some mode distinct and cognizable, accepted the constitution as legalizing the relation. To change an adulterous intercourse into the state of matrimony requires something more, to give expression of the acceptance and consent to the new state, than the mere continuance of the intercourse, after all the difficulties in the way of marriage are removed.

Appeal from the chancery court of Yazoo county. Hon. J. J. HOOKER, Chancellor.

The facts sufficiently appear in the opinion of the court.

*Andrews & Prewett*, for appellant:

The appellant, as widow, was entitled to have the exemptions and allowance set apart for her. Calvit v. Calvit, 32 Miss., 124; Morgan v. Morgan, 36 Miss., 348.

Petitioner bases her right upon section 22 of article 12 of the State constitution which ordains that "all persons who have not been married, but are now living together, cohabiting as husband and wife, shall be taken and held, for all purposes in law, as married, and their children, whether born before the ratification of this constitution or not, shall be legitimate; and the legislature may, by law, punish adultery and concubinage."

The subject matter of marriage is peculiarly within the province of the legislature. It is a matter *publici juris*, created by public law, subject to the public will, and not to

that of the parties, who could not dissolve it by mutual consent. It is more than a contract, because it establishes fundamental domestic relations, affecting the welfare of the community; it is an institution of the State, founded on reasons of public policy. Magee *et ux.* v. Young, 40 Miss., 170, 171; Carson v. Carson, 40 Miss., 351; Code of 1871, § 1755. It is not even essential that the statutory regulations be observed. Hargrove v. Thompson, 31 Miss., 215.

Restrospective legislation which validated a void marriage, has been held to be legal and competent, even though it incidentally affected vested rights of property. Cooley Const. Limit., 372, 373; Goshen v. Stonington, 4 Conn., 224.

The character of proof required in this case is the same as in cases of indictment under the statute for unlawful cohabitation; and the proof in this case would fully maintain an indictment for the offense. Coratti v. The State, 42 Miss., 345.

*J. A. P. Campbell, Miles & Epperson, and R. S. Hudson,* for appellee:

This case calls for an interpretation of sec. 22, art. XII, of the Constitution of Mississippi. The propriety and object of this provision are obvious. It was not to reverse or disregard the revered maxim, consecrated by time and universal recognition, *consensus non concubitus facit matrimonium.*

To constitute marriage there must be an agreement to be husband and wife. *Aggregatio mentium* of the parties on this subject is essential. *Conjunctio animorum, et non conjunctio corporum,* makes marriage. It is a contract, and requires mutual *consent, to be husband and wife,* not merely to live together, or dwell together, but to reciprocally engage to live with each other during their joint lives, in the intimate, honorable and well understood union of husband and wife. It must be *per verba de presenti,* or *per verba de futuro* with cohabitation. So essential and fundamental is the idea of *consent* to constitute marriage, that marriage

actually solemnized with a particular person, through mistake of person, is not valid, because there is no *will* of the party to marry that person.

Marriage by force or fraud is null, on the same grounds, *i. e.* want of consent.

The constitution does not make cohabitation *ipso facto* marriage, but "living together, cohabiting (*i. e.* dwelling together) as husband and wife;" not *like* husband and wife; but *as* husband and wife, having agreed reciprocally to be such.

The particular form of expression employed evinces a studied purpose to exclude the idea of mere concubinage, or cohabitation constituting marriage as embraced in this clause of the constitution.

It was competent for the convention to give effect to the wishes of parties to be husband and wife, but it was beyond its power to "force them into the relation of marriage with each other against (or without) their will." Cooley's Constitutional Limitations, pp. 372, 373.

The provisions of a constitution are not to be extended to objects not comprehended in them, nor contemplated by its framers. Marshall, C. J., in Gibbons v. Ogden, 9 Wheat, 1.

Did the framers of our constitution, in their endeavor to legalize actual marriages and legitimate their offspring, intend to disregard the eternal fitness of things, do violence to the wishes and understandings of men, overturn established order, vacate existing marriages, disregard maxims, hoary with age, sanctify crime, and elevate adultery and concubinage, all too, that a mistress might become a wife, and a rake, a husband, not by consent, but against the will, without consent, by the magical operation of law, and a law made to reach a particular mischief, which is by it effectually cured without the "most mischeivous" construction proposed by opposite counsel to be placed on this section of the constitution.

Let the constitution, in this particular, have full effect and

accomplish its beneficent purpose, but let not an evil more to be deprecated than that it was designed to cure, flow from its improper extension to objects not comprehended by it, "nor contemplated by its framers," in the language of C. J. Marshall, above quoted.

SIMRALL, J., delivered the opinion of the court.

. The single question brought up for revision by this appeal, is whether Medora Rundle is the widow of E. B. Rundle, dec'd, and as such entitled to "provisions" for a year's support under the statute.

It is not claimed that a formal marriage was ever solemnized. Nor is it shown that at any point of time she and E. B. Rundle "*per verba de præsenti*," agreed to accept each other as husband and wife, and actually assumed towards each other that relation. Nor is it proved that each held the other out to society and the world, as bearing towards each other the marital relation.

It is settled law in this State, that marriage is a contract, and must be entered into by parties competent to make it. It is more than an ordinary contract, since it can not be dissolved at the will of the parties. It is an institution of society, and lies at the foundation of good order and morality, and is therefore taken charge of and regulated by the municipal law. Carson v. Carson, 40 Miss., 340.

Being a civil contract, if the marriage relation be entered into with all the common law requisites, but without the forms prescribed by the statute, it will be valid; because the statute does not denounce as null and invalid, a marriage, celebrated otherwise than as it directs. Hargroves v. Thompson, 31 Miss., 211.

There must be "mutual consent" for *Consensus, non concubitus facit matrimonium.*

This consent must be actual and *bona fide,* it must be given in reality, though parties may have gone through with the form of consenting. Clark v. Field, 13 Vt., 460.

A case is referred to by Bishop on Marriage and Divorce,

§ 234, where the man addressed to the woman this letter: "I hereby acknowledge that you are my lawful wife, you may from this date use my name, though for particular reasons I wish our marriage kept private for some time." It was shown that the letter was written so she might obtain admission to the house of a relative, and it was ruled therefore that it did not prove marriage.

The principle which underlies marriage is, that it is a status or relation voluntarily ,assumed by the parties. There must be full and free consent. Therefore, if there be inability to assent, as from mental imbecility, or insanity, the marriage was, at common law, void. Ward v. Dulaney, 23 Miss., 414; Smith v. Smith, 47 Miss., 215. If a party is ensnared into it by fraud or driven by force, it can be dissolved. But it is claimed by the appellant that the marriage was consummated by section 22 of article 12 of the constitution, viz.: "All persons who have not been married, but are now living together, cohabiting as husband and wife, shall be taken and held, for all purposes in law, as married, and their children, etc., * * * and the legislature may punish adultery and concubinage." The words are comprehensive enough to include, and do include, "all persons," without regard to race, color, or previous condition, who are embraced within its meaning and intendment. This section was, however, doubtless inserted in the constitution out of abundant caution, for the benefit of the colored race, more especially. Because there may have been doubt whether the legislature of 1865 may, on account of the anomalous condition of public affairs, in the estimation of some, have been inoperative and of no effect.

The fact was, that the great majority of the adult colored race had not been, and could not be legally married under the former laws of this State, nevertheless they " were living together and cohabiting as husbands and wives." It became necessary, therefore, that their marriages should be sanctified by law, and their children, whether born before or since the adoption of the constitution, should be legitimatized.

But the constitution did not impose marriage upon any except those who were willing and consenting to, and cohabiting in that relation. The same section which gives legal sanction of "marriage" to those "who have not been married," that is, those who have not been married in the usual and prescribed mode, but are living and cohabiting "as husband and wife," that is to say, accepting each other and recognizing each other as husband and wife, they shall be in law esteemed as married; but all others who are living together as adulterers and fornicators, shall be treated as offenders, and punished.

The statutes had defined adultery and fornication to be the "unlawful cohabitation of a man or woman." The offense was described in Carotti's case, 42 Miss., 345, to be "the dwelling together, openly and notoriously, upon terms as if the conjugal relation existed between them;" "the open assumption of the visible forms, and rights of matrimony, without the sanction of the tie of matrimony, and without incurring those obligations and responsibilities which attach to the married state."

The constitution did not intend to sanctify the marital relation between a man and woman because they were cohabiting together like husband and wife, although such "living together" may have extended through one, two, three or more years, and although it may have been public and notorious, unless the parties desired, intended, and in some mode distinct and cognizable, accepted the constitution as legalizing the relation. There did exist among the colored people the marital relation; the parental, and filial authority was completely recognized, although, in a legal sense, they never had been married. Where these relations, or the former alone, existed by the recognition of the parties, and of others, the constitution at once established legal relations. But where there was an impediment in the way, and the intercourse of the parties was begun unlawfully, and without an intention or reference to marriage, although cohabitation may have been continuous and long, the fair and legitimate

presumption would be, that the relation continued as it begun, without change, unless there was a distinct consent given to each other to change from the meretricious to the marital state.

The cohabitation of these parties, began in 1866, was manifestly an offense against the statute referred to, as explained in Carroti's case. To change an adulterous intercourse into the state of matrimony, requires something more to give expression of the acceptance of and consent to the new state, than the mere continuance of the intercourse after all the difficulties in the way of marriage are removed. Such was the rule laid down in Dickerson v. Brown, MSS. opinion. In that case we interpreted the bill as making the allegation, in effect, that the parties jointly accepted the constitution as enabling them to assume the conjugal relation, long desired, but theretofore impossible. We think that the testimony fails to show, that after the adoption of the constitution, these parties manifested or declared, or by anything in their conduct, made it known that they accepted the privilege afforded by that instrument, to assume and bear towards each other the marital relation. Their conduct, relations, and deportment toward each other, continued as before. It is not proved so much as that the complainant assumed Rundle's name, that she called him husband, and he called her wife. It is not shown that Rundle ever presented the complainant in any public place or manner as his wife, and that she assented and claimed that character in the community.

Let the decree be affirmed.