THOMPSON *v.* CLAY ET AL.

[82 South. 1, Division B, No. 20769.]

1. EVIDENCE. *Prior undissolved marriage. Certificate.*
   In a suit where the issue was as to whether or not a prior marriage had been dissolved by divorce, the certificate of the chancery clerks of the counties where the separation took place between the man and his first wife, and where the wife resided

after the separation, showing that no divorce was granted or divorce suit filed in either county at the time of the man's subsequent attempted marriage to another woman, was sufficient to establish that no divorce had been granted at that time, since the chancery court of such counties were the only ones having jurisdiction to grant divorce in such case.

2. MARRIAGE. *Presumption from cohabitation.*

Where both parties knew at the time of an attempted marriage that the man had a living undivorced wife, their relation was illegal in its inception, and it must be presumed, in the absence of proof to the contrary that such illegal relation continued after the death of the legal wife as before, since the change from an illegal to a legal relation in such case requires more than a mere continuance of living together after the removal of the obstacles to marriage.

APPEAL from the chancery court of Washington county. HON. E. N. THOMAS, Chancellor.

Suit by J. W. Thompson against Dick Clay and others. From a decree for respondents, complainants appeal.

The facts are fully stated in the opinion of the court.

*Ben F. Wasson,* for appellant.

Under the facts in the case, the questions to be determined by the court were: First. Whether G. G. Clay, Jr., as the legitimate son of Ben Clay, deceased, was, at the time of conveyance by him to the appellant, vested with a one-third interest which the said Ben owned in said land at the time of his death. Second. Whether the said Virginia Clay who had married the said Ben while he had a living wife from whom he was never divorced, became on the death of said Ben, vested with any title in said land.

The appellant contended that upon the death of Ben Clay, said G. G. Clay, Jr., through whom he claims title, became vested with the title which his father had in said land, and that by deeds from G. G. Clay, Jr., he had acquired title to said one-third interest.

The appellees claim that the said Virginia, as the illegal wife of Ben, and the said Blanche, as the child of said illegal marriage, became vested, at the death of said Ben, with Ben's interest in said land.

The court decreed that the appellant was entitled to a half of the one-third interest of said Ben in said land, and that the said Virginia, as the widow of Ben, is vested with a half of the one-third interest of Ben in said land.

Under the law of descent in this state, G. G. Clay, Jr., became vested with the title of his father, and upon what theory of the law the court could decree that the illegitimate wife of Ben could have an interest in the land, we do not know. It must have been upon the court's idea of equity between the parties and not upon what is the law. Sec. 1383, Hemingway's Code; *Railway Co.* v. *Beardsley,* 79 Miss. 417; *Sullivan* v. *Lodge,* 52 So. 360; *Woodson* v. *Lodge,* 52 So. 457; *Knights of Pythias* v. *Tucker,* 92 Miss. 501.

It was clearly shown that Ben Clay and Polly Clay were never divorced. Therefore, the marriage of Ben to Virginia was illegal. *Railway Co.* v. *Beardsley, supra; Sullivan* v. *Lodge, supra; K. of P.* v. *Tucker, supra.*

In *Woodson* v. *Lodge, supra,* the court said: "No question of heirship is involved here; that is, there is no contest between innocent heirs for the purpose of settling which set are legitimate; each set being equally innocent of participation in the wrong, but being the mere victims of other peoples' wrong. In such case, of course, nothing but the fact of who were the legal heirs could ever settle such controversy."

G. G. Clay, Jr., through whom appellant claims title, is undisputably the sole heir of his deceased father, Ben. If the court below was correct in decreeing that Virginia, the illegal wife of Ben, was entitled to an interest in the land, then the court was in error in not

decreeing that Blanche, the daughter of Ben and Virginia, under this illegitimate marriage, was also entitled to an interest in the land. For, certainly, Blanche was unquestionably innocent of any wrong.

I submit, in conclusion, that if the decree appealed from is affirmed, the statute of descent is abrogated.

*Percy & Percy,* for appellees.

Replying to the reply brief of appellant filed in this cause, counsel for appellant is in error in stating that common law marriages have not been recognized in this state since the enactment of section 2864 of the Code of 1892. He cited *Blanks v. Railway Company,* 82 Miss. 703. True, under the Code of 1892, common-law marriages were not recognized in this state, but the Code of 1906 specifically recognizes common-law marriages in this state. The section which was brought forward from the Code of 1892 contains this additional provision (section 3249, Code 1906): "But no irregularity in the issuance of or omission in the license shall invalidate any marriage nor shall this section be construed so as to invalidate any marriage that is good at common law."

The case of *Blanks* v. *Railway Company* is not applicable at all in this case. The first husband was still living, and of course, where one has contracted a marriage, such a one cannot under any circumstances contract another marriage while the former spouse is living. In the instant case the first wife died in 1913 and our argument is that Virginia Clay and Ben Clay, living together as man and wife from 1916, contracted a common-law marriage.

ETHRIDGE, J., delivered the opinion of the court.

Appellant filed a bill in the chancery court alleging that Scott Clay died seized and possessed of certain

120 Miss.—13

lands therein described, and left as his heirs Ben Clay, deceased, Dick Clay, and G. G. Clay; that in 1890 Ben Clay married one Polly Johnson and had one son, G. G. Clay, Jr., who sold to the complainant his interest in the said land, claiming it to be a one-third interest, and prayed for a partition of the lands. The defendants Dick Clay and G. G. Clay answered the bill, and one Virginia Clay and Blanche Clay, a minor, intervened as defendants and set up that Virginia Clay was the wife of Ben Clay at the time of his death, and that Blanche Clay was the daughter of said Ben Clay, and that at the time of the suit they were living upon said lands and claiming them as a homestead.

An agreed statement of facts is in the record, and the cause was tried upon the agreed statement of facts, coupled with a certificate of M. P. Moore, chancery clerk of Sharkey county, that there was no divorce between Ben Clay and Polly Johnson Clay from August 14, 1890, up to December 31, 1901, at which time the alleged marriage between Virginia and Ben Clay took place. Also a similar certificate from the chancery clerk of Washington county, where the separation between Polly Johnson Clay and Ben Clay took place.

By the agreed statement of facts it was agreed that Dick Clay and G. G. Clay had each a one-third interest in said land. It was further agreed that Ben Clay was legally married in Washington county to Polly Johnson in the year 1890, and that they lived together as man and wife, and to them was born one son. G. G. Clay, Jr., through whom complainant claimed title; that some years after their marriage the said Ben Clay and Polly Clay separated; Polly moved to Sharkey county with her child, G. G. Clay, Jr., and resided there until her death, August 29, 1913; that she died intestate.

It was agreed that G. G. Clay, Jr., is over twenty-one years of age, and conveyed to the appellant, and that on November 30, 1901, Ben Clay married in Washington

county the appellee. Virginia Clay, and they lived to-
gether as man and wife on the said land until January,
1916, when Ben Clay died; that there was born to them
a daughter, Blanche Clay, who at the time of the trial
was fifteen years of age, and that Blanche and Virginia
Clay lived on the said land.

It was further agreed that in the event that the
court decreed for the appellant certain partition would
be made. It was further agreed that the only question
upon which proof would be necessary is whether or not
G. G. Clay, Jr., was vested at the time of conveyance
with a title to the one-third interest of the land, and
whether or not by reason of the marriage of Ben Clay
and Virginia Clay the said Virginia Clay and Blanche
Clay acquired, through the interest of Ben Clay, a title
to said land, and that either party shall have the right
to make proof on these questions.

As stated, the only proof outside of the agreement
is the certificates of the clerks of the chancery court of
the respective counties where the separation took place
between Polly Johnson Clay and Ben Clay and the
residence of said Polly Johnson Clay after said
separation. These certificates show that no divorce was
granted or divorce suit filed in either of said counties
at the time of the pretended marriage to Virginia Clay.
Inasmuch as these counties are the only counties hav-
ing jurisdiction to grant a divorce on the facts set out
in the agreement, it is established that no divorce was
granted, and at the time of said pretended marriage
of Ben Clay to Virginia Clay, Ben Clay was a married
man and incapacitated from making any other marrige.

In the case of *Blanks* v. *Railway Co.*, 82 Miss. 703, 35
So. 570, it was held that a married woman cannot con-
tract a common-law marriage, and that cohabitation,
however long continued, between a married woman and
an unmarried man, will not ripen into a common-law
marriage, although from the beginning they agreed to

be husband and wife, and constantly claimed and held themselves out to the world to be married to each other.

In the case of *Floyd.* v. *Calvert*, 53 Miss. 37, it was held that under section 22, article 12, Constitution of 1869, where a person claimed to be married under said section, there must be shown some formal and explicit agreement between the parties that they will and do accept the new · organic law· as establishing thenceforward such relationship, or there must be such open and visible change in the conduct and declarations of the parties that an agreement to accept the new law might fairly be inferred; that the most that this law could do was to offer persons living in · such relationship the opportunity of legalizing their union.

In *Rundle* v. *Pegram*, 49 Miss. 751, it was held that the above section of the Constitution of 1869 did not impose marriage on any except those who are willing and consent to occupy the relation of husband and wife; that it did not intend to sanctify the marital relation between a man and woman because they were cohabiting together as husband and wife, although such living together may have extended through many years, and although it was public and notorious, and unless the parties intended and in some mode distinct and cognizable accepted the Constitution as legalizing the relation; that changing the relation from illegal to legal requires something more than the mere continuance of the living together after all the difficulties in the way of marriage are removed.

It will be noted from the agreed statement of facts that there is nothing said in the agreement, nor is there any proof in the record, that there was any agreement between Ben Clay and Virginia Clay after the death of Polly Johnson Clay to marry or to become husband and wife. At the time of the alleged marriage it was clearly void because of the fact that Ben Clay had a living wife, and it must be inferred from the

facts agreed to in the record that both parties knew that Jolly Johnson Clay was still living. The relation being illegal in its inception and void for want of capacity in Ben Cay to contract a marriage, it must be presumed, in the absence of proof to the contrary, that the relation continued after the death as before. If there was an agreement after the death of Polly Johnson Clay between Virginia and Ben Clay, it must be proven.

As the chancellor held that Virginia and Blanche Clay were the legal heirs and entitled to the use of a homestead free from partition proceedings, the judgment must be reversed, and judgment will be entered here in accordance with the stipulation of the agreed statement of facts awarding complainant a one-third interest and setting apart the land in accordance with said agreement.

Reversed, and decree rendered here.

*Reversed.*