SYKES *v.* SYKES *et al.*

(Division A. March 7, 1932.)

[139 So. 853. No. 29852.]

488

Paine & Paine, of Aberdeen, for appellant.

McFarland & Holmes, of Aberdeen, for appellees.

Argued orally by **Geo. C. Paine**, for appellant.

**McGowen, J.**, delivered the opinion of the court.

Katie Sykes and McFarland and Holmes, the appellees, filed their suit in the chancery court of Monroe county against Pauline Sykes, the appellant, seeking a cancellation of a claim of title asserted by the appellant, and the confirmation of the appellees' title in and to a certain house and lot in Aberdeen, Mississippi. Katie Sykes asserted title to a one-half interest in said property as the sole and only heir at law of Homer Sykes, she claiming to have been his wife at the time of his death, and it was asserted that she had conveyed a one-half interest therein to McFarland and Holmes.

Pauline Sykes answered the bill denying that Katie was the wife of Homer Sykes, claiming title in the land

as the aunt and next of kin to Homer Sykes under the law of descent and distribution, and seeking, on a cross-bill, to have the claim of the appellees canceled.

Katie Sykes and McFarland and Holmes filed an answer to the cross-bill denying the allegations thereof.

The court below granted the prayer of the original bill, confirmed the title of Katie Sykes, Ben H. McFarland, and G. M. Holmes to the land in controversy, and ordered a sale of the land for partition between the appellees.

The facts material to be stated are as follows: Homer Sykes and Martha Clay Sykes were ceremonially married in the year 1917, and lived together for a short time. On the 27th day of September, 1918, Homer Sykes and Katie Holoway Sykes, one of the appellees, were ceremonially married in the city of Birmingham, Alabama, and returned in a few months to Aberdeen, Mississippi, and lived together as husband and wife in the house owned by Homer. Immediately upon their return, Homer and Katie joined the Baptist Church as husband and wife.

Several witnesses testified that they frequently declared that they were "man and wife," living together as such in the house, and that Homer collected for the "washing" from white people who employed her for that purpose.

The witnesses were uncertain as to dates, but the positive testimony of one witness is that they lived together until after the year 1925, claiming at all times to be husband and wife, openly and publicly as such.

Other witnesses say that they knew them as husband and wife, living together, as long as four years after they returned from Birmingham, Alabama, but when asked about dates had no memory on that subject.

The most satisfactory evidence is that about the year 1925 or 1926 Katie moved to a distant state, and that they did not live together thereafter. In 1929, Homer Sykes died.

On July 20, 1920, the chancery court of Monroe county granted Homer Sykes a divorce from Martha Sykes on a bill filed by him on July 14, 1920; the decree being dated July 20, 1920. Katie Sykes was not introduced as a witness on the trial, and it is not shown that at the time she was ceremonially married to Homer Sykes, or that she knew anything of Martha Sykes, or of her marriage to Homer Sykes.

During the trial, Pauline Sykes offered as a witness Martha Sykes, who testified that in July, 1920, Homer came to her and told her that his wife was worrying about his having a divorce, and he wanted Martha "to sign" for a divorce, and told her that he would pay the costs if she did not fight the divorce or try to do him damage, because he had really married before he got the divorce from her, and that she readily agreed to his proposition. This testimony was objected to and excluded on the ground that it was a collateral attack on divorce, and that, if the witness were permitted to testify, she would inherit the property and could establish her claim against the estate of a deceased person.

It will be observed that, at the time Homer and Katie were married in Alabama, Homer had not been divorced from Martha Clay Sykes. The contention of the appellees is that Katie was the common-law wife of Homer at the time of his death.

It is contended by the appellant that: (1) A common-law marriage is not valid in this state at this time, and we are asked, in effect, to overrule the case of Sims v. Sims, 122 Miss. 745, 85 So. 73, 74, wherein this court construed section 3249, Code of 1906, especially the following: "But no irregularity in the issuance of or omission in the license shall invalidate any marriage, nor shall this section be construed so as to invalidate any marriage that is good at common law"—and held to be valid a marriage resulting from an agreement between a man

and woman to become husband and wife, followed by co-habitation, although no license was obtained therefor. Section 2363, Code of 1930, is the corresponding section to the one quoted with reference to the granting of a marriage license in this state, and, among other things, contains this language: ''The failure to comply with the provisions of this section shall not affect the validity of any marriage duly solemnized, followed by cohabitation, nor the validity of common law marriages as heretofore recognized in this state.''

The construction referred to above was placed upon this statute by this court more than ten years before the enactment of the section cited supra from the Code of 1930. There is no substantial difference in the language, and the court's construction at that time now has the force of legislative sanction by the enactment of section 2363, Code of 1930, in the light of the construction placed upon it by this court. So that we cannot now consider overruling the Sims case.

Counsel relies upon the dissenting opinion in the Sims case, the court having been equally divided. The dissenting opinion did not become the law of the case, nor the rule of this court, and a marriage valid at common law is now recognized in this state.

(2) The burden of proof was upon the appellees to establish a common-law marriage. See Floyd v. Calvert, 53 Miss. 37, and Bracey v. Bracey, 148 Miss. 688, 114 So. 750. There was evidence sufficient to warrant the chancellor in holding that a common-law marriage had been established in this case, and we cannot disturb that finding, for the reason that we cannot say that it was manifestly wrong, keeping in mind that Katie and Homer separated some years before his death.

(3) It is insisted that the testimony of Martha tending to establish collusion between herself and Homer Sykes in procuring the divorce granted July 20, 1920, was clear-

ly incompetent. This was a collateral attack upon the ground of fraud by Pauline Sykes on the divorce decree granted to Homer and Martha Sykes. Pauline Sykes was a stranger to that proceeding, and a stranger may not attack a decree of divorce on the ground of fraud and collusion. The right exists only in certain cases in favor of the injured spouse, and cannot be asserted by a stranger. 19 C. J., 171, section 426.

We find no reversible error in this case.

Affirmed.