On Rehearing.
 

 O’NIELL, Chief Justice.
 

 The plaintiff has appealed from a judgment dismissing her suit on an exception of no cause or right of action. She is suing for recognition as the legitimate daughter of the deceased, Ulisse Marinoni, Jr., and for a third of his estate, as the only forced heir. She avers that a common-law marriage was entered into between her mother and Marinoni, in Mississippi City, in the state of Mississippi, on the 25th of August, 1900, and that she was born of that marriage. The defendants are the widow of Marinoni and the executors and residuary legatee named in his will. The case is before us on rehearing. On the original hearing, a majority of the members of the court were of the opinion that, inasmuch as the plaintiff’s allegation that the law of Mississippi, on the 25th of August, 1900, sanctioned common-law marriages, was an allegation of fact, the case had to be heard on its merits in order to give the plaintiff an opportunity to prove the allegation.
 

 Having considered the matter further, the court has concluded that a suit founded upon what is alleged to be the law of another state is subject to dismissal on a demurrer, or an exception of no cause or right of action, if in fact the law of that state is not what the plaintiff says it is. It is true that the law of a state other than that in which the law is invoked must be proved, as a matter of fact, if the allegation as to what the law is is not demurred to. That is because the state courts do not take judicial cognizance of — because they are not supposed to know — the laws of other states. But, when a suit in a state court is founded upon what is alleged to be the law of another state, the defendant may require the plaintiff to cite specifically the statute or statutes, or judicial decision or decisions, on which the suit is founded; and, if the reference to the law relied upon discloses that the plaintiff has no cause or right of action, the court is not compelled to hear evidence on the facts alleged, before dismissing the suit. The case is then of the character of a suit founded upon a written instrument showing upon its face that the plaintiff has no cause or right of action. A demurrer in such a case does not require the court to assume that, the law is as the plaintiff alleges it is. Such an allegation, however positive its terms may be, is nothing more than an
 
 *605
 
 expression of opinion or conclusion of law. It is the right and the duty of the courts to construe the law on which a litigant relies, even though it he the law of another state; and, when he cites the law specifically in his pleading, there is no reason why the judge should need the opinions of others as to the meaning of the law, except by way of argument. Finney v. Guy, 189 U. S. 335, 23 S. Ct. 558, 47 L. Ed. 839; Hanna v. Lichtenhein, 225 N. Y. 579, 122 N. E. 625, 627; Musser v. Musser, 281 Mo. 649, 221 S. W. 46, 49; 49 C. J. 441, 442, § 545; 21 R. C. L. 509, § 70; Sutherland on Statutes and Statutory Construction (2d Ed. by John Lewis) vol. 2, pp. 622, 623, § 320 (192).
 

 The doctrine is stated in Finney v. Guy, in the syllabus, thus:
 

 “A state court is not concluded as to the proper construction of the statutes of another state and the decision of its courts construing them, on the theory that defendant, by demurring to tlie complaint, which contained an allegation in the form of an averment of fact as to the meaning of such laws and decisions set forth therein, admitted that such was the correct conclusion to be drawn from them.”
 

 In Finney’s Case the court used expressions which are very appropriate here, viz.:
 

 “In this case the statutes, together with references to the decisions of the state courts, are given in the complaint, and the pleader, by making an averment in the form of a fact, assumes to give a meaning to them such as he thinks to he correct; but the duty still remains with the courts to themselves determine from those statutes, and decisions what is in truth the law of the foreign jurisdiction.
 

 The courts are not concluded by an avermentof what is the law in a foreign jurisdiction, contained in a pleading which is demurred to, any more than they would be by the testimony of a witness to the same effect upon a trial; certainly not when the statute upon which the case rests is set forth and the decisions under it are also referred to .as evidence of the law.”
 

 In Hanna v. Lichtenhein, the Court of Appeals of New York stated the proposition, thus:
 

 “An allegation in a pleading of the law of a sister state is, as we have stated, an allegation of fact, which is admitted by the demurrer. If the pleading sets forth in detail the statutes, and decisions relied upon by the pleader, the question becomes one of law, and should be determined as such by the court in deciding the demurrer. A demurrer, in other words, does not admit the interpretation placed by a pleader upon the statutes and decisions specifically referred to or incorporated in a pleading.”
 

 The Supreme Court of Missouri, in Musser v. Musser, announced the rule of pleading, in a suit founded upon the law of another state, thus:
 

 “The general rule, leaving out of consideration for the moment any distinction between the manner in which the common or the statute law of a state is to be pleaded, is that where one relies upon the law of another state to sustain his cause of action he must not only state with distinctness what that law is, as in pleading any other substantive fact, hut also the facts which constitute its violation, that the court may he enabled to
 
 *607
 
 judge of its effect. Mere conclusions as to what counsel may think the law means will not suffice.”
 

 The defendants in this case filed, at the beginning of the suit, an exception of vagueness, and asked that the plaintiff be ordered to state the dates on which her mother and Marinoni were said to have lived together as husband and wife in the state of Mississippi, and to state where they resided, and to cite specifically the statute or statutes of Mississippi on which she relied, and the decisions of the courts of Mississippi construing the statute or statutes relied upon. The plaintiff was ordered to so supplement her allegations; and, ■in response to the order, she averred that her mother and Marinoni had lived together as husband and wife at the Gulf View Hotel, in Gulfport, Miss., from the 23d to the 26th of August, 1900, and at the Willow Cottage Hotel, in Biloxi, Miss., from the 26th until about the 29th of August, 1900, and then moved to New Orleans, and resided in this city, at 822 'St. Peter street, for a period of nine or ten months, commencing about the 30th of August, 1900, and moved from 822 St. Peter street to 1039 Erato street, where they resided for about three months, and then moved to 1429 Joseph street, where they resided for two or three months. The plaintiff alleged that she was relying upon the fact of her parents’ having lived together, in Mississippi from the 23d to the 29th of August, 1900, with the consent to be married, as constituting a valid marriage under the common law of Mississippi. She averred that the allegation in her original petition that Marinoni had obtáined from the clerk of the chancery court of Harrison county, Miss., on the 25th of August, 1900, a license to marry her mother, was merely to show the consent of the parties to the common-law marriage in Mississippi, “but not to show a ceremonial marriage under any statute of the State of Mississippi.” She averred that there was on the statute books of Mississippi, in August, 1900, section 2864 of the Code of 1892, providing:
 

 “A marriage shall not be contracted or solemnized unless a- license therefor shall first have been duly issued, and such license shall be essential to the validity of a marriage.”
 

 The plaintiff alleged that section 2864 of the Mississippi Code of 1892 did not nullify common-law marriages contracted in that state, or affect the validity of the common-law marriage between her parents, and, in support of the allegation, she cited Hargroves v. Thompson, 31 Miss. 211; Dickerson v. Brown, 49 Miss. 357, and Rundle v. Pegram, 49 Miss. 751.
 

 She alleged that the Supreme Court of Mississippi had not interpreted section 2864 of the Code of 1892 up to the time when the Legislature, as she says, clarified the law, in re-enacting the section as section 3249 of the Code of 1906, by adding this provision, viz.:
 

 “But no irregularity in the issuance of or omission in the license shall invalidate any marriage, nor shall this section be construed so as to invalidate any marriage that is good at common law.”
 

 She alleged that, by this amendment of the law, made in adopting section 8249 of the Code of 1906, the Legislature virtually declared that the license referred to in section 2864 of the Code of 1892, as being “essential
 
 *609
 
 to the validity of a marriage,” had reference only to marriages that were solemnized, and not to common-law marriages.
 

 She alleged that, inasmuch as the Supreme Court of Mississippi had never interpreted section 2864 of the Code of 1892 before the adoption of section 3249 of the Code of 1906, and had never construed section 2864 of the Code of 1892 as meaning that common-law marriages were thereby nullified or prohibited in Mississippi, the common-law marriage of' her mother to Marinoni was a valid marriage under the law of Mississippi.
 

 She alleged that common-law marriages in Mississippi had been recognized as valid marriages, by the Supreme Court of that state, in the following cases: Stevenson’s Heirs v. McReary, 12 Smedes & M. R. 9, 51 Am. Dec. 102 (High Court of Er. & App., 1849); Powell v. Powell, 27 Miss. 783 (1854); Hargroves v. Thompson, 31 Miss. 211 (1856); Henderson v. Cargill, 31 Miss. 367 (1856); Spears v. Burton, 31 Miss. 547 (1856); Carson v. Carson, 40 Miss. 349 (1866); Dickerson v. Brown, 49 Miss. 357 (1873); Rundle v. Pegram, 49 Miss. 751 (1874); Floyd v. Calvert, 53 Miss. 37 (1876); and in the following cases decided after the adoption of the Code of 1906, viz.: Howard v. Kelly, 111 Miss. 285, 71 So. 391, Ann. Cas. 1918E, 1230 (1916); Thompson v. Clay, 120 Miss. 190, 82 So. 1 (1919); Sims v. Sims, 122 Miss. 745, 85 So. 73 (1920), and Sykes v. Sykes, 162 Miss. 487, 139 So. 853 (1932).
 

 The defendants then filed their exceptions of no cause or right of action. The pleading was a tacit admission of the adoption of the sections of the Codes referred to, and of the rendering of the decisions re-ferred to, but a denial of the legal conclusion drawn by the plaintiff, that a cohabitation between a man and woman consenting to be married, during the period from the 23d to the 29th of August, 1900, created a valid common-law marriage under the laws of Mississippi.
 

 It is not contended by counsel for the plaintiff, as we understand, that the alleged continuation of the alleged matrimonial relations between the plaintiff’s mother and Marinoni in New Orleans for a period of about fifteen months commencing on the 29th or 30th of August, 1890, added to the validity of the common-law marriage alleged to have been contracted in Mississippi. If a common-law marriage is contracted in a state whose law sanctions such a marriage, the marriage will be recognized as a valid marriage in Louisiana; but a common-law marriage cannot be contracted by virtue of the law of Louisiana. A so-called common-law marriage, entered into in Louisiana, is recognized merely as a state of concubinage.
 

 The defendants in this case contend, primarily, that common-law marriages in Mississippi were forbidden by the adoption of section 2864 of the Oode of 1892, and that such a marriage could not be contracted in Mississippi from that time until the adoption of section 3249 of the Oode of 1906. The defendants contend further that, even if a common-law marriage could have been contracted in Mississippi during the period of six or seven days beginning with the 23d and ending with the 29th of August, 1900, a cohabitation during that short period, between a man and woman consenting to be married, and spending only three days in one hotel
 
 *611
 
 and three or four days in another, would not have sufficed to constitute a common-law marriage. We shall put aside that question, and decide the more important one, whether section 2864 of the Mississippi Code of 1892 placed a ban upon common-law marriages, which was not lifted until the section, as amended, was re-enacted as section 3249 of the Code of 1906.
 

 It is conceded by the attorneys on both sides of this case that the Supreme Court of Mississippi has never had occasion to decide whether section 2864 of the Code of 1892 was meant to forbid the contracting of a common-law marriage in Mississippi. But the Supreme Court of Mississippi has had occasion, in four cases that we know of, to refer to the meaning of section 2864 of the Code of 1S92; and in every instance the court has assumed that a common-law marriage could not have been contracted in Mississippi after the adoption of section 2864 of the Code of 1892, until the adoption of section 3249 of the Code of 1906. We refer to Blanks v. Southern Railway Co., 82 Miss. 703, 35 So. 570; Howard v. Kelly, 111 Miss. 288, 71 So. 391, 392, Ann. Cas. 1918E, 1230; Sims v. Sims, 122 Miss. 745, 85 So. 73, 74; and Sykes v. Sykes, 162 Miss. 487, 139 So. 853.
 

 In Blanks v. Southern Railway Company, decided in 1903, Daniel Blanks was run over and killed by an engine of the railway company, while he was employed by the company; and Margaret Blanks sued the company, claiming to be the widow of Blanks. She testified that she had lived with Blanks, as his wife, from 1885 or 1886 until he was killed; and, apparently recognizing that a common-law marriage could not have been entered into after the adoption of the Code of 1892, she contended that her living with Blanks had constituted a common-law marriage before such marriages were forbidden. The court, also, recognized that a common-law; marriage could not have been entered into after the adoption of the Code of 1892, thus:
 

 “Her only pretense of wifehood in her relations with Daniel [Blanks] is based on her claim that there was a valid common-law marriage between them before the Code of 1S92,
 
 requiring formal celebration,
 
 took effect.” (The italics are ours.)
 

 In Howard v. Kelly, decided in 1916, Henry Howard married Sarah Riley at Port Gibson, in February, 1891, but, after living with her only a few days, he left her and went to Leland, Miss., and there entered into an unholy alliance with Fannie Banks, in the fall of 1891. His wife, Sarah Riley Howard, left Port Gibson and went in search of him, a few days after he had left Port Gibson; but she was never heard of again. He and Fannie Banks moved from Leland to Rolling Fork, Miss., where they established a matrimonial domicile, reared children born of their cohabitation, and continued to live together as man and wife, and to be so regarded and respected, by their neighbors, until she died, in 1903. There was no proof of a ceremonial marriage between Henry Howard and Fannie Banks. Their children, therefore, had to rely upon a common-law marriage. It was -conceded — and was announced by the court — that if there had been a ceremonial marriage between Henry Howard and Fannie Banks the presumption of validity of the marriage would overcome the
 
 *613
 
 presumption that Sarah Riley Howard was yet living, notwithstanding she had not been absent seven years, when Henry Howard began cohabiting with Fannie Banks. The question was whether the same presumption of validity should protect a common-law marriage. The court said that common-law marriages were recognized as lawful before the adoption of the Code of 1892, which was almost the same as to say that common-law marriages were forbidden by the Code of 1892. Justice Stevens, for the court, said:
 

 “The proposition is settled beyond doubt that, where a second marriage, duly solemnized, is shown, the presumption arises that the first spouse has been either divorced or is dead, and that the burden of proof is upon him who claims rights inconsistent with such presumption. The question that now confronts the court is whether this presumption arises in favor of a common-law marriage or must it be confined to what might be termed statutory or ceremonial marriages contracted and solemnized according to the forms expressly prescribed by law. * * *
 

 “In every expression of our own court in the cases mentioned the court refers to the second marriage as one solemnized according to the forms of law or solemnized in due form.
 
 It cannot he doubted, hoioever, prior to the adoption of the Code of 1892, that a common-lam marriage was recognized as lawful and binding as one contracted in pursuance of a license and the usual ceremony.
 
 We are persuaded that every presumption should then be indulged in favor of the legality of a union thus shown in the same way and to the same extent as the law indulges in favor of a ceremonial marriage. * * * In making this declaration we do not wish to be understood as discounting the wisdom or propriety of the usual ceremonies by which marriages are solemnized.
 
 We are not to he understood either as interpreting the meaning of our present statute requiring licenses to he issued.”
 
 (The court was referring then, of course, to section 8249 of the Code of 1906.)
 

 In Sims v. Sims, decided in 1920, O. B. Sims and Mrs. Henrietta Perrin were married at Crownpoint, Ind., in 1893. She had married Perrin, and he had deserted her and had written to her that he had obtained a divorce. Her marriage to Sims was entered into in good faith on the part of both parties. In 1902, however, Perrin called upon Mrs. Sims, admitted that he had not obtained a divorce, and suggested that the divorce should be obtained, and offered to pay the cost. She sued for and obtained the divorce from Perrin, in Chicago, in 1902. She and Sims continued living together 'as husband and wife, and resided thus in Mississippi for about twelve years, until 1918, when he sued her to have his marriage with her declared void, or, if that relief could not be had, to obtain a divorce. She was awarded alimony pendente lite; and Sims appealed from the decree awarding the alimony. The ¡only question before the court was whether the appellant and appellee were then legally married. It was conceded that their marriage at Crownpoint, Ind., in 1893, was void for the reason that she was then the wife of Perrin; hence the only question which the Supreme Court of Mississippi found it necessary to decide was whether the relation which had been maintained between Sims and the woman, in Mississippi, after she had obtained
 
 *615
 
 the divorce from Perrin, in 1903, had resulted in a common-law marriage. The six members of the Supreme Oourt were unanimous in expressing the opinion that section 2864 of the Code of 1892 had put a ban upon common-law marriages in Mississippi. Chief Justice Smith and Justices Stevens and Cools were of the opinion that common-law marriages were sanctioned by section 3249 of the Code of 1906 (section 2556 of Hemingway’s Code), and that it seemed to have been so decided or assumed in Thompson v. Clay, 120 Miss. 190, 82 So. 1. But Justices Ethridge, Sykes, and Holden were of the opinion that the requirements of sections 3245 to 3250 of the Code of 1906 (sections 2552 to 2557 of Hemingway’s Code), for the issuing of marriage licenses by the clerk of the circuit court of the county of the woman’s residence, for the return and registry of marriage certificates, for the celebration or solemnization of marriages, and for the records to be kept of marriage licenses and certificates, etc., were such that a so-called common-law marriage could not be deemed valid in Mississippi. The result of the equal division of opinion of the members of the court was that the decree of the chancellor, that a common-law marriage existed between the appellant and the appellee, was affirmed.
 

 The Chief Justice, writing the prevailing opinion in Sims v. Sims, left no doubt that he and Justices Stevens and Cook maintained that common-law marriages were permitted in Mississippi before the adoption of section 2864 of the Code of 1892, and were forbidden by that section, and were permitted again by the adoption of section 3249 of the Code of 1906. The Chief Justice wrote:
 

 “Proceeding now to set forth the reasons for the opinion of Judges Stevens, Cook and Smith, two questions arise: First, is a common-law marriage valid in Mississippi? and, second, does the evidence disclose a common-law marriage between the parties hereto?
 

 “Prior to the Code of 1892, a common-law marriage was undoubtedly valid in this state, and such a marriage is expressly recognized by section 3249, Code of 1906 (section 2556, Hemingway’s Code). As this statute appears in the Code of 1892, as section 2864 thereof, it is as follows:
 

 “ ‘A marriage shall not be contracted or solemnized unless a license therefor shall first have been duly issued, and such license shall be essential to the validity of a marriage.’
 

 “But, when brought forward in the Code of 1906 as section 3249 (Hemingway’s Code, § 2556), the following language was added thereto:
 

 “ ‘But no irregularity in the issuance of or omission in the license shall invalidate any marriage, nor shall this section be construed so as to invalidate any marriage that is good at common law.’
 

 “The two provisions of this statute seem to be in conflict, but, if the two methods therein dealt with by which the bond's of matrimony may be entered into are kept in mind, the seeming conflict will disappear. The first of these methods is a ceremonial marriage, solemnized pursuant to a license obtained therefor, which marriage will be valid and binding, although not followed by cohabitation. The second is that prescribed' by the common law, which is an agreement
 
 *617
 
 between a man and woman to then and there become husband and wife, followed by cohabitation. * * *
 

 “This court has not heretofore expressly decided that a common-law marriage is authorized by the statute hereinbefore set forth, but that such a marriage is so authorized seems to have been assumed in Thompson v. Clay, 120 Miss. 190, 82 So. 1, and to hold otherwise would be in effect to rewrite the statute under -the guise of judicial construction and to eliminate therefrom the provision recognizing common-law marriages, which provision the Legislature manifestly intended to be effective.”
 

 In the opinion handed down by Justice Ethridge, expressing his views and those of Justices Sykes and Holden, it was agreed that common-law marriages were forbidden by section 2864 of the Code of 1S92, but it was held that such marriages were not permitted by section 3249 of the Code of 1906. It was said:
 

 “Prior to 1892 there was no such section as 3249, Code of 1906 (section 2556, Hemingway’s Code). In 1892 for the first time the Legislature enacted a statute making a license essential to the validity of a marriage, this section reading:
 

 “ ‘License Essential. — A marriage shall not be contracted or solemnized unless a license therefor shall first have been duly issued, and such license shall be essential to the validity of a marriage.’
 

 “The word's in this section ‘unless the license shall first have been duly issued’ caused some persons to be apprehensive as to the construction that might be placed upon these words. Other sections prescribed how the license should be issued, and it was feared that it might be held on construction that the language ‘duly issued’ would make a literal compliance with the statute mandatory. So the latter part of the section as now written was added, expressly providing that — ‘No irregularity in the issuance of or omission in the license shall invalidate any marriage, nor shall this section be construed so as to invalidate any marriage that is good at common law.’ * * *
 

 “Manifestly the purpose of the amendment in 1906 was to prevent mere irregularities in the ceremonial part of a marriage from avoiding the marriage, but to require in all cases the issuance of a marriage license.”
 

 The plaintiff in the present case, in her supplemental petition, contends, as we have Said, that the Legislature, in amending the statute in 1906, virtually declared that the license referred to in section 2864 of the Code of 1892 as being “essential to the validity of a marriage” had reference only to marriages that were duly solemnized, and not
 
 to
 
 common-law marriagés. That idea seems to haye come from the prevailing opinion in Sims v. Sims. But, when the learned chief justice, in, that case, referred to “the two methods [of contracting marriage] therein dealt with,” he had just quoted section 3249 of the Code of 1906, and hence he had in mind “the tw.o methods” dealt with in that section — not in section 2S64 of the Code of 1892. The chief justice was explaining that under section 2864 of the Code of 1892 the only method for contracting a valid marriage in Mississippi was the ceremonial method, by virtue of a license, and that under section 3249 of the
 
 *619
 
 Code of 1906 there were two methods, the ceremonial method, requiring a license, hut not requiring cohabitation, and the common-law method, requiring cohabitation, but not requiring a license. That is how the chief justice reconciled the new provisions with the old provisions retained in the section — which provisions at first seemed inconsistent. We do not find in either of the opinions rendered in Sims v. Sims any statement or suggestion that the common-law method, as well as the ceremonial or license method, of contracting marriage, was permitted by section 2864 of the Code of 1892.
 

 The case of Thompson v. Clay, 120 Miss. 190, 82 So. 1, referred to by the chief justice in Sims v. Sims, was decided in 1919, and dealt with a bigamous marriage, contracted on the 30th of November, 1901, and continuing until the 29th of August, 1913, when the first wife died, and continuing thence until January, 1916, when the husband died. It was held that the cohabitation between the husband and the second wife after the death of the first wife did not result in a valid common-law marriage because both the husband and the second wife knew, when they entered into the unlawful marriage, that the first wife was living and undivorced. But that was after the Code of 1906 was adopted, permitting common-law marriages, as decided in Sims v. Sims.
 

 In Sykes v. Sykes, 162 Miss. 487, 139 So. 853 (in 1932), an appeal was made to the court to overrule Sims v. Sims, and to maintain that common-law marriages were not allowed in Mississippi by section 3249 of the Code of 1906; 'but the court affirmed Sims v. Sims, and said that section 2363 of the Code of 1930, being substantially the same as section 3249 of the Code of 1906, was a legislative sanction of the court’s construction of section 32-19 in Sims v. Sims.
 

 Among the decisions cited in the plaintiff’s petition, those which antedate the Mississippi Code of 1892 are not appropriate here, because it is not disputed — and is not important — that common-law marriages were permitted in Mississippi’ before the Code of 1892 was adopted. The only question here is whether section 2864 of that Code prohibited the contracting of such marriages.
 

 We observed in Grant v. Succession of Grant, 159 La. 543, 105 So. 611, 614, in 1925, that common-law marriages were valid in Mississippi before the adoption of the Code of 1892 and after the adoption of the Code of 1906, but we expressed a doubt as to whether such marriages were valid in that state after the Code of 1892 was adopted and before the Code of 1906 was adopted, viz.:
 

 “It is conceded that common-law marriages are now, and, with the exception perhaps of the period between the adoption of the Codes of 1892 and 1902 [meaning 1906], have been always, recognized by the law of Mississippi.”
 

 It appears to us now that the Supreme Court of Mississippi has construed section 2864 of the Code of 1892 as forbidding common-law marriages; and that is how we would have construed the language of the section, even without the aid of the expressions of opinion of the Supreme Court of Mississippi. The provisions of Mississippi’s Constitutions, of 1869 and of 1890, are in accord with that construction. In the Constitution of 1869, section 22 of article 12 declared:
 

 
 *621
 

 “All
 
 persons who have not been married, but are now living together, cohabiting as husband and wife, shall be taken and held, for all purposes in law, as married, and their children, whether born before or after the ratification of this constitution, shall be legitimate, and the legislature may, by law, punish adultery and concubinage.”
 

 The Supreme Court of Mississippi held, in Dickerson v. Brown, 49 Miss. 357, in Rundle v. Pegram, 49 Miss. 751, and in’ Floyd v. Calvert, 53 Miss. 37, that section 22 of article 12 of the Constitution of 1869 was declaratory of the common law, that marriages might be contracted by agreement of the parties, followed by their living together as husband and wife. That provision in the Constitution of 1869, however, was not retained in the Constitution of 1890; nor was any other provision made in the new Constitution for recognizing common-law marriages as valid marriages in Mississippi. That may well explain why the Legislature, at its. next session after the adoption of the new Constitution, adopted section 2864 of the Code of 1892, forbidding common-law marriages in Mississippi.
 

 The construction which, we believe, the Supreme Court of Mississippi has put upon section 2S64 of the Code of 1892, accords with the rule established in other jurisdictions. In Meister v. Moore, 96 U. S. 76, 24 L. Ed. 826, the rule is said to be that, in the absence of a statute declaring that marriages not celebrated in the manner prescribed by the statute shall be void, a marriage contracted according to the common law, without observing the statutory regulations, is valid; but a statute declaring that no marriage shall be valid unless solemnized in a prescribed manner forbids the contracting of a marriage otherwise, though according to the common law. It is so hold in many states. In Arkansas, see Furth v. Furth (1911) 97 Ark. 272, 133 S. W. 1037, Ann. Cas. 1912D, 595; in California, see Norman v. Norman (1898) 121 Cal. 620, 54 P. 143, 42 L. R. A. 343, 66 Am. St. Rep. 74; and In re Estate of Baldwin (1912) 162 Cal. 471, 123 P. 267; in Delaware, see Wilmington Trust Co. v. Hendrixson (1921) 1 W. W. Harr. (31 Del.) 303, 114 A. 215; in Illinois, see Wilson v. Cook, 256 Ill. 460, 100 N. E. 222, 43 L. R. A. (N. S.) 365; in Maryland, see Denison v. Denison, 35 Md. 361; in Massachusetts, see Inhabitants of Milford v. Inhabitants of Worcester (1810) 7 Mass. 48; in Nebraska, see Collins v. Hoag & Rollins, Inc., 122 Neb. 805, 241 N. W. 766; in New Hampshire, see Dunbarton v. Franklin, 19 N. H. 257; in North Dakota, see Schumacher v. Great Northern R. Co., 23 N. D. 231, 136 N. W. 85; in Oregon, see Huard v. McTeigh, 113 Or. 279, 232 P. 658, 39 A. L. R. 528; in Tennessee, see Grisham v. State, 2 Yerg. (Tenn.) 589; and Smith v. North Memphis Savings Bank, 115 Tenn. 12, 89 S. W. 392; in Virginia, see Offield v. Davis et al., 100 Va. 250, 40 S. E. 910; in Vermont, see Morrill v. Palmer (1895) 68 Vt. 1, 33 A. 829, 33 L. R. A. 411; in Washington, see In re Estate of McLaughlin, 4 Wash. 570, 30 P. 651, 16 L. R. A. 699; and in West Virginia, see Beverlin v. Beverlin, 29 W. Va. 732, 3 S. E. 36; and In re Meade’s Estate, 82 W. Va. 650, 97 S. E. 127.
 

 In Collins v. Hoag & Rollins, 122 Neb. 808, 241 N. W. 766, 768, decided in 1932, the Supreme Court of Nebraska, maintaining that a statute similar to section 2S64 of the Mis
 
 *623
 
 sissippi Code of 1892 forbade common-law marriages, made these singularly appropriate remarks, viz.:
 

 “It has been suggested that the provisions of the statute above quoted were intended to apply only in cases where a license had been first obtained, and not to apply to common-law marriages where no license had been obtained. The language of the statute will not admit of any such interpretation. What reason could exist for making invalid a marriage where a license had been previously obtained but the marriage not solemnized, and yet leaving valid a marriage that was contracted without license or solemnization? No reason for the distinction is apparent. In our view, the statute was clearly intended to prohibit and make invalid any marriage in this state unless a license was first obtained and the marriage solemnized by a person authorized to solemnize marriages.”
 

 Our conclusion is that the judgment appealed from is correct.
 

 The judgment is affirmed, reserving to the plaintiff the right to apply for a rehearing.
 

 BRUNOT, J., dissents.