This is a suit for compensation by a widow on her own behalf and also for the use and benefit of her three minor children, issue of her marriage with her husband, Frank D. Sandidge, the deceased employee in this case. *Page 523 
The decedent was employed as a night watchman by the Citrus Manufacturing Company at Roseland, Louisiana and it is alleged in the plaintiff's petition that on the night of December 11, 1945, he was killed while in the performance of his duties, on his employer's premises at Roseland. It is alleged that he was earning wages of $40 per week and therefore plaintiff is entitled to recover for herself and for the use and benefit of her children, the maximum of $20 per week allowed under the compensation statute for a period of 300 weeks. It is also alleged that she is entitled to funeral, contingent and incidental expenses which exceeded the maximum allowance under the law and therefore she should recover the sum of $300 on this item. Plaintiff filed her suit against the Citrus Manufacturing Co., the decedent's employer, and the Aetna Casualty and Surety Co., its compensation insurance carrier. The defendants jointly filed an exception of no legal right of action in so far as the plaintiff's minor children were concerned, on the ground that she had not qualified as their tutrix. The record does not show what disposition was made of that exception but apparently it has been abandoned as there is nothing said about it on this appeal.
In their answer the defendants admit practically everything that was alleged by the plaintiff except the important fact that she and her three minor children were living with the deceased at the time of his death and were dependent, in whole or in part, upon him and as these allegations are specifically denied, all liability is disclaimed. They then allege affirmatively, that on about January 11, 1944, plaintiff abandoned her husband and moved from Roseland to Cheyenne, Wyoming, taking her minor children with her; that she and the children continued to reside and were residing there separate and apart from the husband and father at the time of his death on December 11, 1945, and that the separation was continuous from the time they left. Defendants further aver that plaintiff was working in Cheyenne, supporting herself and her minor children, and that the oldest of the children, Charles, was likewise working and that none of them received any support whatever from the deceased.
On these issues the case went to trial in the lower court after which there was judgment in favor of the plaintiff awarding her compensation for herself and her minor children at the rate of $20 per week for a period of 300 weeks and an additional sum of $65 to cover the difference in the amount of funeral expenses allowed by the law and the amount which had been paid by the defendant. From that judgment the defendants have appealed.
There are only two questions presented in the case: First, was the plaintiff wife living with her husband, within the meaning of the Workmen's Compensation Act, at the time of his death? and Second, if she was not, was she in any way dependent upon him to such an extend that any contributions made by him to her and her children amounted to their support?
The compensation law, Act 20 of 1914, as amended by Act No. 242 of 1928, pp. 359, 361, Dart's General Statutes Sec. 4398, under subd. 2, Par. (B) Sec. 8, makes the wife conclusively dependent upon the deceased husband employee provided she is living with him at the time of the accident or death. Subdivision 2, Par. (K), of the same section provides that no compensation is payable under this section to a widow unless she be living with her husband at the time of his death or that she "be then actually dependent upon him for support." Par. (D) of Sub-Sec. 2 of Sec. 8 provides that a child or children younger than 18 years are also conclusively presumed to be dependent upon the parent with whom he is, or they are, living at the time of the death of such parent, and that in all other cases "the question of legal and actual dependency in whole or in part, shall be determined in accordance with the facts as they may be at the time of the accident and death; * * *."
The trial judge did not assign written reasons for judgment and we are without information, as far as the record shows, whether he held the defendants liable for compensation on the theory that there was a living together, within the contemplation of the statute at the time of the husband's *Page 524 
death, or whether he held them liable or the ground that the wife and children were actually and wholly dependent on the husband for support.
[1] From the testimony found in the case we have concluded that the plaintiff and her husband were not living together at the time he died and the only claim that can successfully be made for any compensation would be on the question of dependency.
The facts in the case are rather depressing. These two people had been married more than 35 years and, apparently, had gotten along together, or if they did not, 'there isn't anything in the record to intimate that they had not. They had lived in Mississippi most of their married life and then moved to Roseland, where the husband secured employment as night watchman with the Citrus Manufacturing Company. And then on January 11, 1944, the wife seems to have become dissatisfied and decided that she would leave with her children. She went to Jackson, Mississippi, from there to Willow Springs in Missouri, from there to Cheyenne, Wyoming, from there to California and then back to Cheyenne where she was living at the time of her husband's death. All told she was gone for the period from January 11, 1944 to December 11, 1945, one year and 11 months exactly. She now gives as an excuse for her leaving Roseland the fact that she had developed a terrible cough, brought about, as she says, from the dust in and around the factory where she worked, and that her health had become impaired. Strange however if it was to the extent that she found it necessary to move to the dryer climate of the west, she had never consulted a doctor about it. As a matter of fact she did not go west immediately as she first went to Jackson and lived there with her parents for about two weeks and then went to Willow Springs in Missouri, where she secured employment for a short period. All during this time and all the time that she remained away afterwards she never found it necessary to see a doctor or consult one and apparently she seemed to have worked right along wherever she went. Several witnesses were called to testify in her behalf and spoke about a cough she had and were even led to express the opinion that she might have been afflicted with tuberculosis. Naturally the witnesses wouldn't go that far. We do not believe this woman ever had any condition such as she now says she had and that that was her purpose in leaving in January, 1944. The real reason we believe is abundantly shown in two of the letters she wrote to her husband and which were introduced in the record. One of these letters is dated June 13, 1944 from Cheyenne, and in it she expresses herself very frankly by stating that if he had "done right and left that place and made a deacon (decent) living I might have gone on." In another letter dated June 28," 1944, she speaks to him about the job she has and then tells him "I got an easy job and I am not thinking of quit(t)ing it and what more you and I never Blong to another and never will. I live in a different world from you and dont like any of your ideas of life. You deprived me of all the Happiness my young life could have had and why cant you go your way and let me alone never saw a Happy minute with you. I always wanted to go and have fun you didn't. I want to Live in nice houses but you didn't. I want a nice car(e) and to use it no you could have gone and got work in LosAngeles or some place and put us in a nice house. No you wouldn't." Could she have better expressed her reasons for leaving? Rather significantly, in our opinion, in neither of those letters does she mention a word about her cough or her health. We cannot help but feel that this idea about having developed that cough is purely an afterthought and a poor excuse now being offered by her for having left her husband as she did.
But it is now urged on her behalf that she did not mean anything by writing all she did in these two letters and what she was after, was trying to prevail upon her husband to move to California and to secure employment there. In fact she testified that it was their intention when she left, that her husband would sell out his property in Roseland and join her in California and later he decided he did not want to go. She then adds "then we got to spatting about it and of course we never *Page 525 
intended to live apart forever but he did not want to leave here." Let us again, however, look at the letters and see if there is anything to justify what she says was their intention about him eventually going to California to join them? In the first letter from which we quoted she says that she is supporting the children herself and feels better for doing so. She talks about a job she has where she is making $8 a day. She devotes a good bit of that letter warning her husband not to send any money to the oldest boy for him to come to visit him. In other words she seems to have assumed full charge of, and responsibility for them, because as she adds, "I am going to support and care for my kids and I won't have no one interferring. My advice to you is to get married or go to Los Angeles." She doesn't say anything about joining him there and if he followed her advice about getting married it obviously would have been impossible for him to join her. In the other letter she tells him to "please leave me and my own children alone. Don't keep pesting me always. Get you a divorce and go away. Get married anything you want." If anybody can deduce from such statements that her intention, as well as that of her husband, when she left him, was for him to some day move to Los Angeles to join them, we cannot. A court of justice cannot distort the language of her letters and construe her present testimony in such a fashion as to say that living as she did, constituted a living with her husband, for the purpose of satisfying the provisions of the compensation law.
[2] Throughout the trial of the case, and in brief before this court, counsel for plaintiff has insinuated, if indeed he has not charged, that there was some impropriety in the way in which the letters introduced in evidence by defendants, had been obtained. Against his desire to do so, the trial attorney for defendants felt compelled to testify and took the witness-stand to explain the circumstances under which the letters had been procured. They had been taken in possession by the district attorney in his investigation of the killing of the deceased, Frank Sandidge, and were voluntarily turned over to counsel for defendants on the morning of the trial, by the district attorney's secretary, after arrangements had been made with the district attorney for their use in the trial of this case. We find nothing wrong with this and hold that the letters are properly before the court.
If there is to be any recovery at all in the case, we have concluded that it will have to be based on the ground of dependency.
According to the provisions of the compensation law referred to at the beginning, unless the wife be living with the husband at the time of the accident or death, she can only recover if she is shown to have been "actually dependent upon him for support." With regard to the children, if they be not living with the parent at the time of the injury or death, then "the question of legal and actual dependency in whole or in part, shall be determined in accordance with the facts as they may be at the time of the accident and death; * * *." The burden of proof in either case is placed upon the claimant to show the dependency relied upon in each. In this case, the burden was on the wife, in order for her to recover individually, to show that at the time of the injury and death of her husband, she was then actually dependent upon him for support and, on the part of the children, in order to recover on their behalf, she must show that they were actually dependent, either in whole or in part, for support upon him.
[3] As is usual in cases of this kind the question is determined according to the amount of contributions made by the husband either to the wife for herself and the children, or such contributions as may be made to her and which, under the circumstances shown, would be regarded as being made to render some assistance and support on behalf of the children.
[4] In the letters that are filed in the record, this plaintiff seemed to have been proud of the fact that she had secured employment on different occasions and was earning a sufficient amount of money to support herself and her children. Some of it appears to have been written in the spirit of boast and also to humiliate and *Page 526 
embarrass her husband. For instance, we doubt seriously that she ever earned or received as much as $8 per day, as she says she did, in one of her letters. We do believe however that she actually did earn wages amounting anywhere from $20 to $25 per week and which ordinarily would be enough for the support of a woman in her condition and circumstances. We have however, the proven fact that her husband did send her some money from time to time, but in view of all the circumstances surrounding this case, we doubt seriously that he sent it to her with the idea of helping her to support herself and feel very strongly that what he sent was in the interest of helping her to support the children. In other words it was to supplement whatever she did or was able to do towards supporting the children.
[5] On the basis of the decisions on the point here involved it would seem that in order to get the full amount of compensation claimed on behalf of the children it must be shown that they were wholly dependent upon their deceased father for their support. The cases of Dudley v. Martin, La. App.,4 So.2d 102 and Dillon v. Traders and General Insurance Co., La. App., 183 So. 553 seem to be authority on this point. In the first of these two cases there was a lack of proof of any definite or regular amount of contributions made by the husband and it was impossible to apply the formula laid down in the compensation law itself for cases of partial dependency, and found in Sub-Sec. 2 of Sec. 8 of the compensation law, as amended by Act 242 of 1928. Accordingly the minimum amount of compensation allowed under the statute of $3 per week was awarded. In the Dillon case there was sufficient testimony on which to base a definite amount of contributions and the formula was applied. But as the amount was only $1.62 per week, the minimum allowance of $3 per week was awarded.
In the present case the only testimony to the effect that the deceased sent regularly, sums which she only estimates, amounted to about $100 per month, is from the plaintiff herself. On the other hand she has supplied proof for the record that he did send her various amounts during the years 1944 and 1945 by postal or telegraphic money orders and if we can satisfy ourselves as to what these amounts were, then we may be able to make an award based on the formula stated in the compensation statute as for partial actual dependency. The amount to be awarded is one which "shall be equal to the proportion of the weekly payments for the benefit of persons wholly dependent as the amount contributed by the employee to such partial dependents in the year prior to his death bears to earnings of the deceased at the time of the accident." Counsel for the defendants have compiled a statement covering the contributions they claim were shown by the record, to have been made during both years 1944 and 1945. Under the provision of the statute just quoted we can only take into consideration the amount of contributions made during the year 1945 as that, we would say, was the year prior to the death of the deceased employee which occurred on December 11 of that year. We have checked over these amounts and find that they correctly represent the total sum of $320.
[6] It is undisputed that the earnings of the deceased for that year amounted to the sum of $2064.60. It is easy therefore with these figures to work out the formula which would be this: $320, the amount of contributions is to $2064.60, the amount of earnings, as the sum of $20, the maximum rate of compensation which could be paid, is to "X." When it is worked out it will be found that "X" is the sum of $3.10. This amount of weekly compensation plaintiff is therefore entitled to recover for the use and benefit of her minor children for a period not exceeding three hundred weeks. We find no proof to support the extra sum of $65 allowed for funeral expenses and said to be in excess of the sum of $235 paid by defendants.
We deem it proper to reverse and recast the judgment appealed from and for the reasons stated,
It is ordered that the said judgment be and the same is hereby reversed, annulled and set aside and is now recast so as to read as follows: *Page 527 
It is ordered, adjudged and decreed that there be judgment herein in favor of the plaintiff, Mrs. Elvie Rhodes Sandidge, for and on behalf of her minor children, Charles, Catherine and Frank Sandidge, and against the defendants, Citrus Manufacturing Company and Aetna Casualty and Surety Company, awarding her compensation for and on behalf of the said minors at the rate of $3.10 per week for a period not to exceed three hundred weeks from December 11, 1945, with interest at the rate of 5% on each payment, from that date until paid, together with all costs of this proceedings.