96 So.2d 653

Zeola Koen BRINSON

v.

Effie Mae King BRINSON.

No. 42839.

Feb. 25, 1957.

On Rehearing June 28, 1957.

Eugene J. Coen, Shreveport, and Walter E. Doan, New Orleans, for defendant-appellant.

Cook, Clark, Egan, Yancey, & King, Shreveport, for plaintiff-appellee.

McCALEB, Justice.

This litigation concerns the ownership of the estate of Willie Leon Brinson who died on February 9, 1952, at his residence in Caddo Parish, which he occupied as a common dwelling with Effie Mae King Brinson.

On April 14, 1952, Effie Mae King Brinson (hereinafter referred to as defendant), appearing as surviving widow, together with Walter B. Brinson, Hugh D. Brinson and Fred N. Brinson, appearing as the sole surviving heirs of their father, opened the succession of Willie Leon Brinson in the First Judicial District Court for the Parish of Caddo and, on the same day, obtained an ex parte judgment placing them in possession of the estate in the proportions of one-half to defendant and an undivided one-sixth interest to each of the three above named sons. Thereafter, defendant purchased the respective interests of the three sons by warranty deed for a cash consideration of $2,000.

On August 1, 1952, Zeola Koen Brinson, a resident of Hattiesburg, Mississippi, alleging herself to be the true and lawful widow of Willie Leon Brinson and entitled as such to the ownership of an undivided one-half interest in and to all the property of which he died possessed, filed this suit against defendant in the First Judicial District Court for the Parish of Caddo seeking, in effect, a nullity of the ex parte judgment under which defendant and the sons of decedent were placed in possession of his estate. The sons of Brinson, who were non-residents, were joined as defendants and cited through a curator ad hoc.

Plaintiff's claim that she is the lawful widow of Brinson stems from the following state of facts:

Willie Leon Brinson was first married to Annie Lillian Taylor by a ceremonial marriage at Brookhaven, Mississippi, on May 22, 1921. Four children were born of that union, one of whom died unmarried

and without issue, the other three being the three sons made defendants herein.

On September 11, 1931, during the existence of his marriage to Annie Lillian Brinson, Willie Leon Brinson was ceremonially married to plaintiff, Zeola Lee Koen, pursuant to a license issued to "Walter Leonard Brinson". Following this marriage, Brinson and plaintiff lived openly and publicly as husband and wife at various places in Mississippi and other states and, in September of 1932, Brinson went to Arkansas where he filed a suit for divorce, based on desertion, against his first wife, Annie T. Brinson. In that proceeding, plaintiff appeared as a witness for Brinson by deposition executed in Little Rock, Arkansas, on September 26, 1932, in which she stated, in substance, that she had known Brinson and his first wife for ten years; that his wife had deserted him on many occasions; that she last deserted him in June of 1930 and that they had not lived together since then.

On the strength of this deposition (another deposition of plaintiff's brother, Sankey Koen) and verbal evidence of Willie Leon Brinson and one A. N. Sexton, a decree of divorce was entered on November 3, 1932, by the Pulaski Chancery Court for the County of Pulaski, Arkansas.

In the following year (October 10, 1933), Annie Lillian Brinson, evidently ignoring the Arkansas divorce decree, obtained a judgment of absolute divorce against Willie Leon Brinson in the Chancery Court of the County of Lincoln, State of Mississippi. As aforesaid, during the period following their ceremonial marriage in 1931, plaintiff and Willie Leon Brinson lived as man and wife in Mississippi and other states and, in 1945, they acquired a home in Hattiesburg, Mississippi under a deed describing them as husband and wife. No children were ever born of this relationship which apparently continued until Brinson's death.

On June 9, 1946, Brinson married defendant, Effie Mae King, by a ceremonial marriage performed in Bossier Parish, Louisiana and immediately thereafter established a matrimonial domicile in Caddo Parish where the parties lived openly and publicly as husband and wife in a home purchased by them, which deed of purchase described them as husband and wife. No children were born of this relationship which continued uninterruptedly until Brinson's death in Caddo Parish.

The theory of plaintiff's case is twofold—(1) in her original petition, she averred that the ceremonial marriage of September 11, 1931, in Gulfport, Mississippi, between Brinson and herself was a valid marriage and (2) in the alternative, by supplemental petition, she claimed that, should it be held otherwise, her relationship with Brinson constituted a valid common-law marriage under the laws of Mississippi, which should be recognized in

Louisiana, and that, therefore, the marriage between Brinson and defendant in 1946 was a nullity.

In answer to the demand, defendant asserted that plaintiff was not the lawful wife of Brinson under the laws of Mississippi either as the result of the attempted ceremonial marriage between them in 1931 or by reason of their living together thereafter in the relationship of common-law husband and wife.

After a hearing on these issues, the trial judge rejected plaintiff's original claim that her ceremonial marriage was valid but, being of the opinion that a common-law marriage came into existence by reason of their continued relationship of living together as man and wife following the divorce granted to Mrs. Annie T. Brinson in 1933, held that plaintiff was the lawful common-law widow of Willie Leon Brinson and, therefore, entitled to be recognized as owner of an undivided one-half interest in his estate in Louisiana.[1] In reaching this conclusion, the judge, while expressing his belief that both Willie Leon Brinson and plaintiff were in bad faith at the time their ceremonial marriage was performed in Gulfport, declared that this factor did not preclude the holding that a valid common-law marriage came into existence following the divorce of Brinson by his first wife for the reason that the law of Mississippi does not require any new agreement between the parties when the ceremonial marriage is not contracted in good faith and that the mere continuance of the relationship as husband and wife suffices. The judge further ruled that defendant was the putative wife of decedent entitled, as such, to the other one-half of the estate.

From this judgment defendant appealed to this Court but we ordered the matter transferred to the Court of Appeal, Second Circuit, finding that the case was not within our appellate jurisdiction. See 228 La. 350, 82 So.2d 36. After a review of the case, the Court of Appeal affirmed the judgment of the trial court recognizing plaintiff as the lawful common-law widow of Willie Leon Brinson. However, in arriving at this conclusion, the appellate court disagreed with the trial judge's finding of fact that the ceremonial marriage between Brinson and plaintiff was meretricious insofar as plaintiff was concerned. Being of the opinion that plaintiff was in good faith, it was held, in accordance with the pronouncement of the Supreme Court of Mississippi in Sims v. Sims, 122 Miss. 745, 85 So. 73, that a valid common-law marriage became extant as soon as the existing legal impediment to the marriage was removed by the continuous relationship of the parties as husband and wife, notwithstanding that the ceremonial marriage was void.

1. See Article 2400 of the Civil Code and Succession of Dill, 155 La. 47, 98 So. 752.

On application of defendant, we granted ·certiorari and the matter has been argued and submitted for our decision.

■ At the outset, we observe that plaintiff's original claim of a valid ceremonial marriage between Brinson and herself was properly rejected by both the district court and the Court of Appeal and is no longer an issue in the case. Therefore, since it has been many times held that common-law marriages which are valid and legal in the state where contracted will ordinarily be given recognition by the courts of Louisiana,[2] the issues for determination are (1) whether the continued relationship of plaintiff and Brinson as husband and wife following the divorce of Brinson and his first wife in 1933 effected a valid common-law marriage under the law of Mississippi and (2), if so, whether such a marriage is subject to recognition in Louisiana when the original relationship of the parties is contrary to the public policy of this state and produces no civil effects as to any party thereto who is not in good faith. These questions present for decision issues of law and fact. Initially, we must determine the question of fact as to whether plaintiff was in good faith when she contracted the ceremonial marriage in Gulfport in 1931.

■ Plaintiff testified that she did not know that Willie Leon Brinson was married to Annie Lillian Taylor at the time of her ceremonial marriage to him at Gulfport and she also denied that she executed the deposition of September 26, 1932, in Little Rock, Arkansas, in which she stated that she was a trained nurse then residing in Little Rock; that she had known Brinson and his first wife for ten years; that the latter had deserted him on many occasions, the last time being in June of 1930 and that they had not lived together since then.

Despite plaintiff's denial, the district judge was of the opinion that the deposition was genuine and that, taking it into consideration with other evidence, the conclusion was inescapable that she had knowledge that Brinson had a wife from whom he was not divorced at the time of the ceremonial marriage in Gulfport. While he declared that it was unnecessary for him to decide the factual issue of plaintiff's good or bad faith in entering into the ceremonial marriage with Brinson in 1931, in view of his belief that the law of Mississippi recognized a common-law cohabitation even though it originated in bad faith, the judge commented on the credibility of plaintiff's testimony as follows:

"*We may observe, however, that there is much evidence in the record to indicate that she knew at the time of*

2. See Grant v. Succession of Grant, 159 La. 535, 105 So. 611; Gibbs v. Illinois Central Railway Co., 169 La. 450, 125 So. 445 and Succession of Marinoni, 177 La. 592, 148 So. 888.

*Brinson's prior marriage, his wife was still living and undivorced from him.* This she categorically denies in her testimony in the case at bar and she further categorically denies that she gave the deposition in the Little Rock, Arkansas, divorce proceeding hereinabove referred to. *Although, from all the evidence, her denial is not too impressive to the court."* (Emphasis ours.)

However, the Court of Appeal would not accept the trial judge's appraisal of plaintiff's testimony, choosing, instead, to give full credence to her unsupported statement that she did not execute the deposition bearing her name before a notary public in Little Rock, Arkansas, and in the presence of the lawyer who handled Brinson's divorce action. The reasons given by the Court of Appeal for its confidence in plaintiff's testimony were that she was steadfast in her denial that she executed the deposition even after the trial judge had taken occasion to meticulously explain the meaning of the word "deposition" and the legal consequence which might result in case she gave false testimony. The court also pointed out that defendant made no attempt to incorporate in the record any testimony which would have detracted from plaintiff's sworn denial and it further indicated, in

accordance with a suggestion by plaintiff, that it was entirely probable that Brinson would have forged plaintiff's signature[3] without her knowledge and consent. See 84 So.2d at page 892.

We cannot subscribe to this reasoning. In the first place, direct and circumstantial evidence was adduced to contradict plaintiff's sworn denial or, rather, her denial followed as a natural sequence to her sworn claim of good faith after defendant had introduced the damaging deposition in evidence. The fact is, of course, that there was introduced in evidence in the Arkansas divorce proceedings a deposition bearing plaintiff's name and it was shown by the evidence of Mr. Quinn Glover, a reputable attorney practicing in Little Rock since 1924 (who testified by deposition), that a person identifying herself as Zeola Koen was personally present in his office where her deposition was taken and signed by her and that, as disclosed by said deposition, she stated, among other things, that she was a trained nurse and had been living in Little Rock and Hot Springs for some time. Added to this is the circumstance that plaintiff was admittedly a trained nurse at the time the deposition was given and also that her brother, Sankey Koen, gave a similar deposition in the divorce case.

3. Examination of specimens of plaintiff's signature appear to be practically identical with the signature affixed to the deposition. Conversely, specimens of Brinson's handwriting and his signature show a distinct dissimilarity between his handwriting and that of plaintiff.

Furthermore, while the Court of Appeal was not obliged to accept the trial court's conclusion that plaintiff did not testify truthfully, it is patent, in a case such as this, that the district judge, having had the opportunity of hearing plaintiff's evidence and of observing her demeanor on the stand, was in a far better position than either the appellate court or this Court to determine her credibility and his appraisal of it should not be lightly overturned. For our part, we not only fail to perceive error in the judge's evaluation of plaintiff's testimony but we think, after a consideration of all circumstances of the case, that it was manifestly sound.

 Since we find that plaintiff, as well as Brinson, was in bad faith at the time they contracted the ceremonial marriage in Gulfport, we now consider the legal consequence of the continuance of their relation as husband and wife after the first Mrs. Brinson obtained a decree of divorce in 1933. The trial judge ruled that the cases of Howard v. Kelly, 111 Miss. 285, 71 So. 391 and Sims v. Sims, supra, were authority for the conclusion that a bigamous marriage contracted in bad faith by both parties could nevertheless be transformed into a valid common-law marriage by the mere continuance of their relationship of husband and wife after the impediment to marriage had been removed and that neither a ceremony nor a new express

agreement is essential. Whereas, a reading of Howard v. Kelly would seem to sustain this view, the subsequent decision in Thompson v. Clay, 120 Miss. 190, 82 So. 1, is directly contrary thereto as the court held in the Clay case that, where a marriage is contracted in bad faith, a new agreement between the parties is necessary after the impediment is removed in order for the relation to attain validity.

In the still later case of Sims v. Sims, which, although decided by a divided court, has become the leading case in Mississippi on the subject, the court found the parties to be in good faith at the time of the void marriage and the prevailing opinion is predicated on this factual conclusion. The court said [122 Miss. 745, 85 So. 74]:

"It is not clear, or at least we will assume that it is not, from the appellee's testimony, that she and the appellant entered into a new marriage agreement after she obtained the divorce from Perrin, *but no such new agreement was necessary, for the reason that her marriage with the appellant in Indiana was entered into by both of them,* according to her testimony, which the court evidently accepted as true, *in good faith, under the belief that her marriage with Perrin had been dissolved,* and after its dissolution in 1902 they, the appellant and

appellee, *continued in good faith to live together as, and considered themselves to be, husband and wife.*" (Emphasis ours.)

Thus, it would appear that, but for the good faith of the parties, a new agreement would have been necessary following the removal of the impediment in order to effect a valid marriage.

It is true that after coming to the above quoted conclusion the author of the opinion in Sims v. Sims went on to set forth the general rule in common-law states, with respect to cases such as the one now under consideration, and, pointing out that the majority of the states recognize the transformation of the illegal marriage into a valid common-law marriage by the mere continuance of the relationship between the parties after the removal of the impediment, whether the void marriage was contracted in good faith or not, asserted that Howard v. Kelly, supra, was to be classified with that line of jurisprudence whereas the later decision in Thompson v. Clay came under a second class of cases requiring a new agreement. Obviously, this dissertation was purely obiter dicta as the court had already determined that the parties were in good faith.

In the last expression of the Supreme Court of Mississippi on the subject, In re McCaskill's Estate, 219 Miss. 313, 68 So.2d 495, where the decision in Sims v. Sims is cited and quoted from with approval, the

ruling of the court upholding the validity of the marriage was again founded on the good faith of the parties. Accordingly, far from subscribing to the doctrine that good faith is not essential in order for a valid common-law marriage to be transformed out of a void marriage by the mere continuance of the marital relationship, it would appear that the jurisprudence of Mississippi, except for Howard v. Kelly, is that good faith is essential.

■ But, should we be mistaken in our interpretation of the views of the Mississippi Supreme Court with relation to common-law marriages, there is another ground on which we rest our decision in refusing to sanction plaintiff's claim. This is that it would be contrary to the public policy of this state to hold that a bigamous marriage contracted in bad faith in another state may nevertheless produce its civil effects under our law. While this Court has heretofore recognized, as a matter of comity, common-law marriages valid where contracted, none of the cases has involved a situation like this where the alleged common-law marriage is the outgrowth of a ceremonial marriage, void at its inception and contracted in bad faith by both parties.

■ It is a well established rule of conflict of laws that the spirit of comity between states does not require a state to recognize a marriage which is contrary to

its own public policy.[4] Succession of Gabisso, 119 La. 704, 44 So. 438, 11 L.R.A., N.S., 1082; 55 C.J.S. Marriage § 4, pp. 813 and 814. The public policy of this state with respect to the effects produced by a null marriage is to be found in our Civil Code and jurisprudence.

■ Articles 117 and 118 of the Civil Code, which treat of the civil effects of null marriages, affirmatively state that no civil effects can flow from a marriage which is null unless the claimant was in good faith.[5] Hence, since our Code and jurisprudence (see Thomas v. Thomas, 144 La. 25, 80 So. 186 and Dillon v. Traders & General Ins. Co., La.App., 183 So. 553) require absolute good faith on the part of a spouse claiming the civil effects of a bigamous union, it would be inimical to public policy for this Court to conclude that such a relationship, conceived in bad faith, will be given effect in Louisiana merely because it may be sanctioned in the state wherein it existed.

The judgment of the District Court, which was affirmed by the Court of Appeal, is reversed and plaintiff's suit is dismissed at her costs.

PONDER, J., recused.

HAWTHORNE, J., absent.

On Rehearing

HAMITER, Justice.

A further consideration of the evidence in this cause convinces us of the correctness of our conclusion reached on the original hearing that both plaintiff and defendant were in bad faith when they contracted the bigamous ceremonial marriage in Gulfport, Mississippi, in 1931. Accordingly, for the reasons heretofore assigned, we reaffirm that conclusion.

Whether their subsequent relationship as husband and wife, particularly that existing after the decree of divorce obtained by the

4. The general rule is succinctly summed up in 35 Am.Jur., "Marriage", Sec. 172, p. 287 et seq., thusly:

"Although, the general rule is that the validity of a marriage contract is determined by the lex loci contractus and celebrationis, it is not every marriage which may be valid by such law that will be recognized as legal everywhere else. Every sovereign state is the conservator of its own morals and the good order of its society. Consequently, where marriages between certain persons are prohibited by the public policy and law of one jurisdiction as contrary to morals and

social order, they will not be deemed valid therein, although they are deemed valid in the state or place where they were celebrated, and although the parties to the marriage were there domiciled * *".

5. Article 117 reads: "The marriage, which has been declared null, produces nevertheless its civil effects as it relates to the parties and their children, if it has been contracted in good faith."
Article 118 provides: "If only one of the parties acted in good faith, the marriage produces its civil effects only in his or her favor, and in favor of the children born of the marriage."

first Mrs. Brinson in 1933, transformed the illegally commenced union into a common law marriage valid under the laws of Mississippi is a question we need not decide herein. Assuming arguendo that it did, such marital arrangement should not and cannot be recognized in this state.

As was pointed out in our original opinion, common law marriages valid and legal in the states where contracted will ordinarily be given recognition, as a matter of comity, by the courts of Louisiana. On that basis we have several times recognized their validity (although in no case has such been done where, as here, the union "is the outgrowth of a ceremonial marriage, void at its inception and contracted in bad faith by both of the parties"). But we are not bound to give effect to a common law marriage, even if valid in the state where contracted, when it contravenes the public policy of Louisiana and good morals generally. This concept is stated in 35 American Jurisprudence, verbo Marriages, Section 170, as follows: " * * * Ordinarily, of course, when a person changes domicil, the personal status which he carries with him will be recognized by the courts of the state or country to which he changes his domicil, and this applies to the marital status of a person, but there are certain well-recognized exceptions to this general rule. If the marital status has been acquired by a violation of an express provision of the positive law of the state in which its recognition is asked, *or if it is contrary to the spirit and genius of its institutions or opposed to its settled policy or the good order and well-being of its society, or to its conceptions of public morality and decency,* in all such cases the status would not and should not be recognized by the courts of such state." And in 55 C.J.S., Marriage § 4(2), this is said: "The rule that the lex loci contractus is controlling as to the validity of a marriage rests on comity alone, and an exception thereto exists where the marriage is repugnant to the public policy of the domicile of the parties or is contrary to its positive laws." (Italics ours.)

For us to recognize as a valid marriage the mere continuation of the meretricious relationship as existed between plaintiff and decedent—that which commenced in bad faith and continued without those persons having entered into a ceremonial marriage or a specific marital agreement subsequent to the removal of the impediment—would be contrary to our public policy, opposed to the well being of society, and violative of the spirit of our laws concerning the institution of marriage.

For the reasons assigned the decree heretofore rendered is now reinstated and made the final judgment of this court.

PONDER, J., recused.

SIMON, J., dissents.