990 So.2d 742 (2008)
In re SUCCESSION OF Harvel George HENDRIX.
No. 08-CA-86.
Court of Appeal of Louisiana, Fifth Circuit.
August 19, 2008.
Rehearing Denied September 22, 2008.
*744 Gary J. Raphael, Attorney at Law, Gretna, LA, for Plaintiff/Appellee.
Nelson J. Cantrelle, Jr., Attorney at Law, Gretna, LA, for Defendant/Appellant.
Ronald W. Morrison, Attorney at Law, Metairie, LA, for Defendant/Appellee.
Panel composed of Judges SUSAN M. CHEHARDY, FREDERICKA HOMBERG WICKER, and GREG G. GUIDRY.
GREG G. GUIDRY, Judge.
The Defendant, Mary Catherine Tingle, appeals from a judgment finding Amma Dell Wactor to be the putative spouse of the deceased, Harvel George Hendrix, and awarding an undivided one-half interest in immovable property to her assignees, Mildred Ann Crooks, Patsy Jean Rawle, and Donna Kay Bergeron. We affirm.
The case was initiated in 2002 in a petition to appoint an administrator for the succession of the deceased. Nelson Cantrelle, Jr. has represented Tingle in the proceedings from its inception.
On September 19, 2004, the Plaintiffs intervened in the succession of Hendrix, filing a Petition to Rescind the Donation and Sale [of the property] and for Declaratory Judgment. The intervention was filed by Bergeron, Hendrix's biological daughter, and Crooks and Rawle, two of three adopted daughters from his third marriage to Mildred Pevey (Pevey-Hendrix). The Petition claims that Hendrix and Wactor were married in 1951 in Mississippi, legally separated in the late 1950's in Mississippi, and divorced in 1984 in Louisiana. During that time, while still legally married to Wactor, Hendrix purchased immovable property in Louisiana with Pevey-Hendrix, prior to their marriage. The interveners claim that Hendrix subsequently donated his property interest to Pevey-Hendrix, who in turn donated the property to Mary Catherine Tingle, Hendrix's third adopted daughter from his marriage with Pevey-Hendrix. The interveners claim that the sales and donations made by Hendrix and Pevey-Hendrix, are absolute nullities, should be declared as such, and the Wactor assignees awarded Wactor's one-half undivided interest in Hendrix's interest in the property.
The case was heard in March of 2007. On July 13, 2007, the trial judge rendered a judgment in favor of the Plaintiffs. He determined that Wactor was the putative spouse of Hendrix, granted the petition to rescind the donation and the sale of the property, declared the sale of Hendrix's interest in the property an absolute nullity, and found any subsequent transfers made by Pevey-Hendrix to be absolute nullities. He further declared Wactor owner of an undivided one-half interest in Hendrix's interest in the property.
Notices of the judgment were mailed on July 18, 2007. The notice mailed to Cantrell was returned by the post office as undeliverable. The clerk contacted counsel to obtain his correct mailing address on August 8, 2007. On that day, Cantrell sent his son to pick up a copy of the judgment, and filed a motion for new trial. The clerk *745 then sent counsel a copy of the judgment on August 17, 2007.
The Plaintiffs objected to the motion for new trial arguing that it was filed untimely. Following a hearing in which the clerk and Cantrell testified, the trial judge ruled in favor of the Plaintiffs, finding that the clerk complied with her obligations, and that it was Cantrell's responsibility to notify the clerk of his change of address. He noted that Cantrell testified that he still receives mail at the address used by the clerk and that he is considering moving back to that office.
On appeal, the Defendant contends that the motion for new trial was not untimely, because Cantrell did not receive the notice of judgment until after the seven-day delay had run. She further contends that Cantrell's correct address was on pleadings in the record and could have been found by the clerk.
On the merits, the Defendant, Tingle, argues that the trial judge erred in finding Wactor to be the putative spouse of the deceased, as she was not in good faith. She claims that when Wactor married Hendrix in 1952, she knew Hendrix was not divorced from his first wife whom he married in 1932, and thus is not entitled to the benefits of community property.

NEW TRIAL
The delay for applying for a new trial shall be seven days, exclusive of legal holidays. La.C.C.P. art. 1974. The delay for applying for a new trial commences to run on the day after the clerk has mailed, or the sheriff has served, the notice of judgment as required by Article 1913. Id.
A review of the record shows that Cantrell's first pleading in the record declares that his address is on Huey P. Long Avenue in Gretna, the address used by the clerk to notify counsel of the judgment. That address is on all of the pleadings until February 5, 2007. In a motion for continuance on that date, counsel changed his address from Huey P. Long Avenue to a Post Office Box in Gretna. Then, on April 11, 2007, in a Joint Pre-Trial Order, Cantrell uses a Cedar Lawn Street address in Marrero, which is apparently his current office address. In his post-trial memorandum filed June 1, 2007, he reverts to the P.O. Box address. He then changed his address again in his motion for new trial filed August 8, 2007. In that pleading he utilizes the Cedar Lawn address.
In a closely similar case, the Louisiana Fourth Circuit found that the new trial delays had not commenced where the notice of the judgment was sent to the wrong address. JCM Const. Co., Inc. v. Orleans Parish School Bd., 02-0824, pgs. 48-49 (La.App. 4 Cir. 11/17/03), 860 So.2d 610, 638. There, the notice was sent to the Orleans Parish School Board instead of the School Board's attorney. The court reviewed the record and determined that counsel's correct mailing address was on all of the pleadings he filed into the record, and that it was not counsel's fault that the clerk mistakenly sent the notice to the School Board.[1]
According to the record in this case, counsel for the Defendant used three different mailing addresses in his pleadings. The clerk testified that she used the mailing address on Huey P. Long Avenue, *746 which was on the pleadings filed by counsel from 2002 until 2007 (five years). She did not examine the record for other addresses. Nevertheless, counsel argues that he performed his duty of notifying the clerk of his address, because he completed a change of address form with the post office. Further, he contends the clerk should have known from the record that he was no longer using the Huey P. Long Avenue mailing address.
The record reflects that the clerk complied with her duties under the statute. She sent notice of the judgment and certified the date in the record. When the post office was unable to deliver the copy of the judgment, she telephoned counsel to obtain his correct mailing address, at which time she notified him of the judgment, and he filed the motion for new trial. Unfortunately, by that time, the new trial delays had passed.
Under the circumstances, we find that the mistake is not attributable to counsel or the clerk, but to an unfortunate series of events. Thus, as appeals are favored in the law, we find that the motion for new trial was timely, and thus, this appeal is timely. Since the motion for new trial was timely, the motion for written reasons was also timely. Rather than remand however, we will address the merits of the appeal in the interest of judicial economy.

MERITS
The Defendant asserts that the trial judge manifestly erred in finding that Wactor to be the putative spouse of Hendrix, in granting the Petition to Rescind Donation and Sale and Petition for Declaratory Judgment, in declaring the sale by the decedent an absolute nullity, and in declaring Wactor to be the owner of an undivided one-half interest of all the rights, titles, and interests that Hendrix had or may have.
When Hendrix married Wactor in January of 1951 in Columbia Mississippi, Hendrix was not yet divorced from his first wife. He did not obtain that divorce until December of 1952. Hendrix and Wactor had a son in 1955. In 1959, Wactor obtained a legal separation in Mississippi from Hendrix, custody of, and child support of the minor child.[2] Hendrix was notified of the separation decree.
From 1968 through 1978, Hendrix and Mildred Pevey acquired, immovable property together in Louisiana. On September 13, 1983, Hendrix sold his interest in the property to Pevey. On April 11, 1984, Hendrix obtained a divorce from Wactor in Gretna, Louisiana. Harvey then married Pevey in Louisiana approximately two weeks later.[3]
Eighteen years later, in 2002, Hendrix died.[4]
Shortly after his death, Pevey-Hendrix donated the property to her daughter, the actual Defendant herein, Mary Catherine Tingle.[5] Pevey-Hendrix also executed a will near that time, leaving her estate to Tingle.
Wactor subsequently discovered the existence of the property at issue here when contacted by the attorney for the Plaintiffs relative to the succession proceedings.
In August of 2004, Wactor sold to the Plaintiffs her claims against the Hendrix estate and Pevey-Hendrix.[6]
*747 On September 9, 2004, Pevey-Hendrix died.
Ten days later, the Plaintiffs filed this intervention in the Hendrix's succession proceedings to recover Wactor's interest in the immovable property. They named as Defendants, Peggy Hendrix Flanders and Margaret Hendrix Sanders, in their capacity as co-administratrixs of the Hendrix succession, as well as Pevey-Hendrix and Tingle. Flanders and Sanders are also daughters of Hendrix and Pevey-Hendrix, and are the sisters of the Plaintiffs and Tingle. Flanders and Sanders support the Plaintiffs' claims.
The principle Defendant, Tingle, is the sole testamentary heir of Mildred Pevey-Hendrix. The claims against Pevey-Hendrix were dismissed with prejudice in March of 2007, since she died without any interest in the property.
The factual findings of the trial court are accorded great weight and will not be set aside absent a showing of manifest error. See: In re Succession of Nette, 04-437 (La.App. 5 Cir. 11/16/04), 890 So.2d 16, 18; In re Succession of Lee, 02-189 (La.App. 5 Cir. 10/29/02), 831 So.2d 477, 479. The standard of review of the legal issues concerning Wactor's status as a putative spouse is de novo, however, as is our review of whether the 1983 sale of the immovable property is an absolute nullity.

Validity of the Marriage
Louisiana recognizes marriages that are valid in the state where contracted. La.C.C. art. 3520. Since Wactor and Hendrix were married in Mississippi, Mississippi laws govern the validity of the marriage contract.
Mississippi recognizes common law marriages if both parties agree to be married and the agreement to be married is followed by cohabitation. Hunt v. Hunt, 172 Miss. 732, 161 So. 119 (1935). A claim of a common law marriage is regarded with suspicion and will be closely scrutinized. Ladnier v. Estate of Ladnier, 235 Miss. 374, 109 So.2d 338, 342 (1959). The burden of proof is on the one who asserts a claim of such marriage. Id. In addition, all of the essential elements of such a relationship must be shown to exist. Ladnier, 109 So.2d at 342. When one of the parties is dead, the existence of all of the essential elements must be shown by clear, consistent, and convincing evidence. Id.
In Johnson v. Johnson, 196 Miss. 768, 17 So.2d 805, 806 (1944), a man married his second wife believing his first wife to have died after they separated. Unbeknownst to them, the first wife was alive when the husband married the second wife, but died later. The Mississippi Supreme Court held that a marriage contracted in good faith is lawful and legal and valid after the removal of the impediment. Thus, once the first wife died, the impediment was removed and the second marriage became legal.
Only common law marriages prior to 1956 remain valid under Mississippi law today. Miss.Code Ann. § 93-1-15. However, although the Mississippi Supreme Court has invalidated common law marriages where one of the spouses was in bad faith, the Supreme Court of Mississippi has not explicitly said that good faith is a necessary component of a valid common law marriage.[7] See, Gaston v. Gaston, 358 So.2d 376, 378 (Miss.1978); Stutts et al. v. Estate of Stutts, 194 So.2d 229 (Miss.1967); Ladnier v. Ladnier's Estate, 235 Miss. 374, 109 So.2d 338 (1959). In Louisiana, however, the common law marriage must have been made in good faith in order for it to *748 be recognized as legal and entitled to the benefits of marriage.
In Brinson v. Brinson, 233 La. 417, 432-434, 96 So.2d 653, 658-659 (1957), the most recent statement by the Louisiana Supreme Court regarding recognition of common law marriages, the Court imposed a good faith requirement. The Court stated that, although such marriage might be otherwise valid in the foreign state, to recognize a marriage made in bad faith would contravene the public policy of Louisiana. Id.
Wactor testified that shortly after she met Hendrix he told her he was legally separated from his first wife. At the time Wactor married Hendrix in 1951, he told her he had obtained a divorce. After their marriage, Wactor and Hendrix lived in Alabama, Georgia, Louisiana, and Mississippi, while he pursued a career in construction. Wactor and Hendrix last lived in Mississippi together in the late 1950's. They lived for five months in Louisiana, the longest time they lived anywhere. During those months, Wactor considered Mississippi to be her home. Wactor voted in Mississippi and had a Mississippi license.
Wactor testified that she never received notice of Hendrix's petition for divorce filed in Louisiana and did not know he had obtained one until he contacted her sometime in the 1980's. He never told her about the property in Louisiana, and she did not find out until July of 2004 when she was contacted by the Plaintiffs and advised of her rights. Wactor said that Hendrix never informed her about his relationship with Pevey, or that he had sold, donated or given away property in Louisiana.
At the times that the lots were purchased (1968, 1976, and 1983), Wactor still believed she was married to Hendrix.[8] After the Plaintiffs contacted her, she assigned her rights to her three daughters from a prior marriage, Elaine Snyder, Helen Larsson, and Mary Ann O'Bryant. She separately assigned her community property rights to the Plaintiffs. Wactor and Hendrix's son had died in 1999.
In this case, Wactor testified that she was unaware that Hendrix was married when she wed him. They held a ceremony and received a marriage license. Following the wedding ceremony, the couple lived together as man and wife, and held themselves out to the public as husband and wife. Thus, the relationship meets all the requirements for a valid common-law marriage, except for Hendrix's good faith. Hendrix knew he was married before entering into marriage with Wactor. Nevertheless, the marriage became valid under Mississippi law when Hendrix obtained his divorce and the impediment was removed. See, Johnson, 17 So.2d at 806.[9] Thus, although the trial judge erred in applying the putative spouse law of Louisiana, his conclusion that Wactor was the legal spouse of Hendrix during the times that the lots were purchased is correct.

The Immovable Property
When immovable property located in Louisiana is at issue, Louisiana law applies, regardless of the domicile of the parties. La.C.C. art. 3524. Furthermore, the community property laws of Louisiana are applied to any immovable located in *749 this state, including immovable property involved in successions. La.C.C. art. 3520; La.C.C. art. 3533.
Because their union was legal, Wactor is entitled to community property benefits under Louisiana property law. The community property comprises property acquired during the existence of the legal regime. La.C.C. art. 2338. Each spouse owns a present undivided one-half interest in the community property. La.C.C. art. 2336. A spouse may not alienate, encumber, or lease to a third person his undivided interest in the community prior to the termination of the regime. La.C.C. art. 2337. Furthermore, a spouse may not alienate, encumber or lease former community property or his undivided community interest in that property without the concurrence of the other spouse. La.C.C. art. 2369.4. In the absence of such concurrence, the alienation, encumbrance or lease is a relative nullity. La.C.C. art. 2353.
A relative nullity may be invoked only by those persons for whose interest the ground for nullity was established, and may not be declared by the court on its own initiative. La.C.C. art. 2031. An action to annul a relatively null contract must be brought within five years from the time the ground for nullity either ceased, as in the case of incapacity or duress, or was discovered, as in the case of error or fraud. The prescription on this claim runs from the moment of discovery, in this case, 2004, when Wactor discovered the contract of the sale. Thus, the action is timely.
The evidence is uncontradicted that the sale to Pevey-Hendrix occurred without the consent and knowledge of Wactor. Thus, the donation and sale by Hendrix of his interest in the property to Pevey-Hendrix is a relative nullity. Consequently, the trial judge did not err in declaring null and void the sales and donations of Hendrix's interest in the community property by him to Pevey-Hendrix, and by Pevey-Hendrix to the Defendant.

Acquisitive Prescription
The Defendant also argues that, even if Wactor had an interest in the immovable property, the property was acquired by Pevey-Hendrix through acquisitive prescription. The trial court did not rule on this issue.
According to Louisiana law, ownership and other real rights in immovable property may be acquired by the prescription of ten years. La.C.C. art. 3473. The requisites for acquisitive prescription of ten years are: possession of ten years, good faith, just title, and a thing susceptible of acquisition by prescription. La.C.C. art. 3475.
In this case, ten years have passed since Pevey-Hendrix acquired the property in 1983, and the property is a thing susceptible of acquisition by prescription. Furthermore, the Defendant has just title to the property, as the act was written in valid form and recorded in the public registry.[10] The Defendant's claim fails, however, because Pevey-Hendrix was not in good faith.
Under La.C.C. art. 3481, good faith is presumed. Neither error of fact nor error of law defeats this presumption, but the presumption can be rebutted on proof that the possessor knows, or should know, that he is not owner of the thing he possesses. Id. For purposes of acquisitive prescription, a possessor is in good faith when he reasonably believes, in light of objective *750 considerations, that he is owner of the thing he possesses. La.C.C. Art. 3480.
When considering the issue of a possessor's good faith, the totality of the circumstances must be considered in order to rebut the presumption. Phillips v. Parker, 483 So.2d 972, 977 (La.1986); City of Shreveport v. Noel Estate, Inc., 41,148, p. 20 (La.App. 2 Cir. 9/27/06), 941 So.2d 66, 80-81.
The Plaintiffs assert that Pevey-Hendrix was not in good faith because Pevey-Hendrix falsely recorded that she was Hendrix's wife on the original titles of purchase for the property at issue, and because she knew or should have known that he was still married to Wactor at that time, and that Wactor had an interest in the transactions. Furthermore, the Plaintiffs argue that the sale of the property to Pevey-Hendrix seven months before Hendrix divorced Wactor indicates that Hendrix tried to prevent the property from being divided between them when he obtained the divorce.
The evidence shows that Pevey-Hendrix knowingly and falsely signed her name as Hendrix's wife on the property title documents in 1968, 1976, and 1978. She also misrepresented under oath her marital status when Hendrix donated the property to her seven months prior to filing for divorce from Wactor.
A falsity on a title does not immediately invalidate the title. See, La.R.S. 35:11 (when a title is filed in registry, it is valid against third parties); c.f. La.C.C. art. 2342 (prohibits setting aside an alienation, encumbrance, or lease on the ground of the falsity of the declaration of separate property). This fact alone is insufficient to prove bad faith, but can be considered with the other facts in the case.
Pevey-Hendrix's daughter, Peggy Flanders, asserted that her mother was aware of the existence of Wactor and her son prior to 1984. She testified that she worked for them for 32 years at their law clinic. Flanders stated that prior to 1984, Hendrix received letters from Wactor and Hendrix's young son at the clinic, and in those letters the child expressed an interest in meeting Hendrix. He included school pictures in the letters. Flanders personally saw the contents of the letters, and the envelopes contained the son's return address in Mississippi. Flanders stated that she overhead discussions between her mother and Hendrix regarding Hendrix's son, and that these conversations occurred prior to 1984.
Pevey-Hendrix was involved with Hendrix since the 1960's. She knew him well enough to purchase land with him in the 60's and 70's, she pretended to be his wife, and she misrepresented her marital status on the purchase documents. Pevey-Hendrix knew about Hendrix's son by Wactor before the donation in 1983, and the divorce from Wactor in 1984. Reviewing the evidence in its totality, we can reasonably conclude that Pevey-Hendrix either knew or she should have known that Hendrix was still married to Wactor when the property was purchased. Thus, we find that the evidence is sufficient to rebut the presumption of good faith, and that acquisitive prescription by ten years does not apply.[11]
Accordingly, the judgment of the trial court is affirmed.
AFFIRMED.
NOTES
[1] There are numerous cases relating to whether the clerk complied with the certification requirement of notifying the attorneys' of the date the judgment was mailed. That is not an issue in this case. The clerk here properly filed certifications in the record indicating the date the judgment was mailed along with the respective addresses to which the judgment was sent.
[2] The son died in 1999.
[3] April 25, 1984.
[4] January 6, 2002.
[5] January 25, 2002.
[6] She sold her claims for $100.
[7] See: Nichols v. Sauls' Estate, 250 Miss. 307, 165 So.2d 352, 357-58 (1964) where the court invalidated the marriage based on the husband's fraud.
[8] The lots in question are numbers 58 and 59, Sunrise Acres and lots 4 and 5, Sq. 3, St. Jude Subdivision in Jefferson Parish.
[9] The trial judge considered the testimony of Wactor and concluded that she was a good faith spouse. We agree with that finding. Thus, even if Louisiana law applied, Wactor would be a putative spouse, entitled to all of the spousal benefits. See, La C.C. art. 96.
[10] A just title is a juridical act, such as a sale, exchange, or donation, sufficient to transfer ownership or another real right. The act must be written, valid in form, and filed for registry in the conveyance records of the parish in which the immovable is situated. La. C.C. art. 3483.
[11] Acquisitive prescription based on 30-years does not apply either, since that time period has not elapsed. La.C.C. art. 3486.