ETHRIDGE, Chief Justice:
This case involves two groups of claimants to portions of the estate of George W. Stutts, Sr., deceased. He died intestate in 1964 and left a substantial estate. The issue centers around the interpretation and effect of a “legitimation of issue” section in the 1962 statute establishing grounds and procedures for the adjudication and annulment of marriages. Miss.Laws 1962, Ch. 278, being Miss.Code Ann. §§ 2748-01 to 2748-08 (Supp.1964). The Chancery Court of Hinds County held that section 3 of the annulment act, the “legitimation of issue” provision, did not legitimate appellants as lawful heirs of Stutts, and thus they were not entitled to inherit from him.
I.
Before 1962 there was no statutorily defined procedure and substantive law for annulment of marriages. The chancery courts followed common-law, equity rules. Bunkley & Morse, Amis on Divorce and Separation in Miss., §§ 2.04 — 2.07 (1952). Chapter 278, Mississippi Laws 1962, is entitled: “AN ACT to establish grounds and statutory procedure for the adjudication and annulment of marriages.”
Section 1 provides, “All bigamous, incestuous, or miscegenetic marriages are void, and a declaration of nullity may be obtained at the suit of either party.” Section 2 states that a marriage can be annulled for incurable impotency, insanity or idiocy of either or both parties, failure to comply with the premarriage health statute not followed by cohabitation; or in the absence of ratification, incapability of either party to consent- to marriage or for physical causes, force or fraud, and pregnancy of the wife by another person, if the husband did not know of it.
Section 3, the part at issue here, states:
“Legitimation of issue. Except for incestuous or miscegenetic marriages, the issue of the parties to a void marriage conceived subsequent to the date thereof is legitimate, whether the marriage be declared void because of a prior existing marriage, or is annulled for some other cause.”
Section 4 gives the court the power to make orders touching the care and custody of children. Section 5 states where the bill is to be filed. Section 6 gives jurisdiction to chancery courts, with the same rules of pleading and practice as in divorce cases.
The two questions stemming from section 3 involve the meaning of the phrase “void marriage,” and whether section 3 is self-executing or requires a judicial determination as a prerequisite to legitimation.
II.
George W. Stutts, Sr., was born in 1881 and died in 1964. In 1904 he married Alice Crawford Stutts in a ceremonial marriage. She died in 1929. They had ten children, one of whom was Hosea Stutts, who predeceased his father.
In 1944 Stutts, Sr., married Zelma Mitchell. There is testimony that they were married by a preacher, but no marriage license or other record of a ceremonial marriage was found. At any rate, there is no dispute that this marriage to Zelma was *231 lawful, whether common-law or ceremonial. They had two children, Benjamin F. Stutts and Gussie Zelmea Stutts.
The rights of the children of Stutts’ marriages to Alice Crawford and Zelma Mitchell to inherit from him are not in controversy. The issues here arise (a) from a relationship which Stutts had with Maggie Brown, and (b) from a relationship which Hosea Stutts, son of Stutts, Sr., had with a woman named Alliene Spiers.
Common-law marriages were valid in this State until 1956, when they were abolished. Miss.Laws 1956, Ch. 239, being Miss.Code Ann. § 465.5 (Supp.1964). Ladnier v. Ladnier’s Estate, 235 Miss. 374, 109 So.2d 338 (1959), summarized the rules on common-law marriages, in a case where the asserted husband was deceased. In order to establish the existence of such a marriage, before the 1956 statute, it was necessary to show an agreement between the parties that they intended to be husband and wife, and that this agreement was followed by cohabitation. A claim of such marriage is regarded with suspicion and will be closely scrutinized; the burden is on one who asserts the claim, and all essential elements must be shown to exist. Further, when one of the' parties is dead, the essential elements must be shown by clear, consistent, and convincing evidence.
III.
From 1951 to 1962, Stutts, Sr., and Maggie Brown lived together from time to time, and obviously they engaged in sexual intercourse. Whether their conduct stemmed from the feeling that they were husband and wife or was simply for the purpose of personal gratification was an issue. When Maggie was 17 years of age, and Stutts was 70, he installed her in a room in his hotel in Yazoo City. At that time he was living with his wife Zelma Mitchell in Jackson. . Maggie lived there for about two years. He paid her living expenses. He then moved her into a house which he owned, and visited there on a number of occasions. During that time Maggie had three children, born in 1953, 1955, and 1956. They are claimants and appellants, Emanuel, Delores, and Ezekiel Stutts. Maggie took the name of Stutts and gave the children that name. She knew Stutts was married. Stutts looked after her and the children until 1962, when they had a disagreement. She did not claim that Stutts was her husband. The chancery court was amply warranted in finding from the evidence that there was no common-law marriage, absent the prior impediment.
The other claimant-appellant is Myles Stutts. He is the son of Hosea Stutts, who died before his father Stutts, Sr. Hosea married Velma Lewis in 1932, and from that marriage they had a daughter, Alice Stutts Jaynes, an heir through her father. Myles is the son of Hosea and Alliene Spiers. He was born in 1938, when Hosea was married to Velma Lewis.
Hosea met Alliene, who lived in the country, and stayed there with her in her parents’ home for about two months. Subsequently Myles was born. Hosea visited from time to time and supported this child, thinking it was his. Later, particularly after Hosea’s death, Stutts, Sr., developed an affection for Myles, treated him as a grandson, put him in a school, and gave him a place to live and work. The chancery court found that there was insufficient evidence to show a common law marriage to Alliene. There was no agreement that they would be married and would be husband and wife. There were none of the elements of a common-law marriage, even if Hosea had not had a wife. The evidence supported this finding of the trial court.
In short, both groups of claimants-appellants are illegitimate children of George W. Stutts, Sr., and thus not entitled to inherit from him, unless section 3, Chapter 278, Laws 1962, legitimates them. We do not think it does. Cf. Miss.Code Ann. § 474 (1956).
*232 Section 3 provides that’ “the issue ‘of the parties to a void marriage conceived subsequent to the date thereof is legitimate * * * ” This contemplates more than a mere adulterous or illicit relationship. The statute is not effective to legitimate the issue resulting from a meretricious cohabitation, where there was never any kind of a marriage, either ceremonial or common law. Both groups of claimants are in this category, as the chancery court found. See 10 Am.Jur.2d, Bastards § 2 (1963); Annot., 84 A.L.R. 499-506 (1933). As between the parents of appellants, there was never any kind of a marriage, either ceremonial or common law, without considering the prior impediments of existing marriages by their fathers. Moreover, a “void marriage” under section 3 must have been entered into innocently and in good faith by at least one of the parties. Unless this factor exists, it is not such a “void marriage” as is contemplated by the legitimating statute, section 3. See Annot., 84 A.L.R. 499-501 (1933).
Furthermore, Chapter 278 requires a judicial declaration of nullity and of legitimation of the children. The title of the act reflects an intent to establish a procedure “for the adjudication and annullment of marriages.” The first two sections provide that a declaration of nullity may be obtained “at the suit of either party,” and states the causes for ánnullment. Section 3 reflects a legislative intent to require a judicial declaration of legitimacy. It provides that the issue of the parties to a “yoid marriage” is legitimate, “whether the marriage be declared void because of a prior existing marriage, or is annulled for some other cause.” These two clauses of section 3 show a purpose to require an adjudication of legitimacy. We do not reach or consider the question of whether a declaration of nullity and of legitimacy of children may be obtained at the suit of one of the parties to the “void marriage,” where the other is deceased.
Bernheimer v. First National Bank, 359 Mo. 1119, 225 S.W.2d 745 (1949), and Nelson v. Jones, 245 Mo. 579, 151 S.W. 80 (1912), holding that the Missouri legitimating statute does not require the marriage to have been declared void by a court decree, are not persuasive. The Missouri act is in the code chapter on descent and distribution. The Mississippi annulment act is in a different context, and the legitimizing section 3 is only a part of an overall statute providing “for the adjudication and annulment of marriages,” and a procedure for legitimizing children of a “void marriage.” In Nelson the marriage which was declared void as being bigamous was common law in nature, and in Bernheimer a ceremonial marriage was contracted. See Bunkley & Morse, Amis on Divorce and' Separation in Mississippi, § 2.05 (Supp. 1964) ; Comment, 34 Miss.L.J. 104, 110, 111 (1962).
Affirmed.
JONES, PATTERSON, INZER . and" ROBERTSON, JJ., concur.